SULLIVAN v. SUSONG & CO.

1. After plaintiff had done certain grading for a railroad company under contract, the value of which was fixed by its chief engineer, this company sold out to defendants, who undertook to pay its debts, "provided the work done should be measured and valued."    Plaintiff and defendants then agreed that this work should be remeasured and the value computed by two engineers to be selected by the parties, plaintiff to

20—30

await further payment until this was done. *Held*, that plaintff had no action against defendants until the terms upon which defendants assumed this liability were complied with, unless these terms—the remeasurement and revaluation—were shown to be impossible of performance or to have been defeated by defendants' fault.

2. If the two engineers failed to act under the agreement between plaintiff and defendants, without the fault of either party, *it seems* that the plaintiff could not fall back upon his rights under the contract between defendants and the railroad company until he had refunded to defendants the cash payment made to him by defendants under the terms of the agreement between them.

3. Whether parol evidence is admissible to show a mistake in the designation of the engineers as written into this agreement, raised but not considered.

4. One of the engineers named being unable to act, plaintiff sued defendants for the amount as fixed by the chief engineer of the railroad company before the sale, alleging that the work was reasonably worth that much. The Circuit Judge referred the cause, with instructions to require a remeasurement by suitable engineers to be appointed by the parties, or, they failing, by the master. *Held*, that such order was proper—certainly the plaintiff has no ground for complaint.

5. The amount due plaintiff being still unascertained, he is not entitled to interest.

Before PRESSLEY, J., Aiken, June, 1888.

The report of the referee in this case was as follows:

This action, and all the issues therein, was, by an order of this court, referred to me to hear and determine the same. I have duly considered the allegations and proofs of the parties, and having heard Henderson Bros., Esqs., for the plaintiff, and W. C. Benet, Esq., for the defendants, determine said issues as is herein stated. The distinguished counsel discussed, with great learning and zeal, every possible question of fact and law involved in this action. I cannot attempt to follow counsel in their able and interesting arguments, however pleasant that task might be to me, as time and space forbid the effort. I shall, as briefly as possible, state my own conclusions.

The Atlantic, Greenville & Western Railway Company was, in February, 1886, and the times hereinafter mentioned, a corporation under the laws of this State, and engaged in the construction of a railway over their right of way in the Counties of

Aiken, Edgefield, and Abbeville in this State. In February, 1886, said railway company employed the plaintiff herein "to construct and finish in the most substantial and workmanlike manner, to the satisfaction and acceptance of the chief engineer of said company, all the gradation, masonry, and such other work as may be required," on that section of their railway extending from Ninety-Six to Cokesbury, in Abbeville County. "Such other work as may be required," as the provisions of the contract between plaintiff and said company show, means such work as the chief engineer might direct plaintiff to perform, such as widening, beyond the width stated in the notes of survey, for the guidance of the contractor in building the railway, the cuts and embankments of the road, digging ditches, repairing work already completed and accepted by the company, changing highways, and providing for the safe and easy passage of the travelling public across said railway where the same is crossed by highways. In a few words, the chief engineer had the authority to require plaintiff to obey his orders, and to fix the compensation to be paid to plaintiff for all work done by him not specifically provided for in the contract. Such work in the evidence is called "extra work."

The railway company agreed to pay to the plaintiff as compensation for his work, $9\frac{3}{4}$ cents for each cubic yard of earth, 34 cents for each cubic yard of loose or soft rock, 69 cents for each cubic yard of solid rock, and $9\frac{3}{4}$ cents for each cubic yard of excavation and embankment necessary in the construction of the railway. On the first of each month during the progress of the work, the chief engineer of the company was to make an estimate of the relative value of the work then done by plaintiff, and the company was to pay plaintiff ninety per cent. of the value of the work done; and when all of the work was done to the satisfaction of the engineer of the company, said engineer was to make a final estimate of the quality, character, and value of the work, and plaintiff was to be paid the full amount due him as then estimated. The contract between plaintiff and the railway company stipulated "that the work under this contract shall, at every stage of its progress from beginning to end, be subject to the direction, inspection, and acceptance of the engineer, who shall determine,

without appeal, what in any case a fair construction of the contract requires to be done by either party; and whose measurements, classifications, and estimates, monthly and final, shall be absolutely conclusive upon both parties."

Plaintiff performed his part of the contract, the chief engineer made his monthly inspection and estimate, and on May 19, 1886, made a final estimate of the completed work, as the contract required, and certified that plaintiff had graded 15¾ miles on this section, and that the work done was worth $8,126.31. One item in said amount reads, "Road crossing and changing public road, $132." On April 30, 1886, the railway company paid to plaintiff, on account of this demand, $2,800, and on June 7, 1886, the further sum of $4,000, leaving the railway company in debt to the plaintiff on last mentioned date in the sum of $1,326.31.

On June 10, 1886, the railway company made a second contract with plaintiff, containing the same terms and stipulations, conditions, and parts, as appears in the contract made in February, 1886, whereby plaintiff contracted to construct a section of said railway extending from Hamburg, in Aiken County, to Johnston, in Edgefield County. Plaintiff performed his part of this contract, his work was inspected monthly by the chief engineer, and on August 6, 1886, the chief engineer made a final report as to a part of the work done on this section, and certified that said work was worth $7,547.59. On December 15, 1886, the chief engineer made a final estimate of the work done on the remainder of this section, and certified the same to be worth $11,439.36. These two items aggregate $18,986.95. Plaintiff has been paid upon this amount, $1,795. The exact date of this payment does not appear, and it was paid as follows: Parties along the line of said railway had subscribed certain sums, upon certain conditions, to the railway company, and given their notes therefor. These notes were turned over to plaintiff as collateral security for the payment of the amount due him by the railway company, with authority to "receive" such payments as the makers should make, and to apply the amounts thus received upon his debt. Plaintiff "received" $1,795 upon these notes, and that amount must be credited upon his debt, which left $17,-171.36 due plaintiff. Plaintiff in his final settlement must, upon

the payment of his demands, return these notes to defendants, they having purchased them from the railway company, or account for the same.

As matters then stood the plaintiff and the railway company were bound by the estimates of the chief engineer because an account stated or a liquidated demand. *Martinsburg & Potomac R. R. Co.* v. *March*, 114 U. S., 549. Plaintiff could have sued the railway company for this amount, and his having taken the notes, heretofore referred to, would not have estopped him from so doing. "A creditor holding collaterals is not bound to apply them before enforcing his direct remedy against the debtor." *Lewis, Trustee,* v. *United States*, 92 U. S., 619; *Story Cont.*, § 692.

It was alleged in the complaint, and admitted in the answer herein, "that on the 21st day of December, 1886, the aforesaid defendants (Susong & Co.) by their contract in writing, under seal, and for valuable consideration, entered into a covenant for the benefit of the creditors of the aforesaid railway company, whereby and wherein they promised to pay the debts then due by said railway company to its creditors, and thereby they became liable and responsible for the aforesaid debts of the plaintiff so as aforesaid due to said plaintiff at said time by the said railway company." The debts then due to plaintiff by the railway company, and referred to in the pleadings, are those I have already stated and discussed. On December 21, 1886, the defendants herein, Susong & Co., became bound to plaintiff for the payment of $18,517.67, the amount then due plaintiff as principal by the railway company.

It appears that the defendants questioned the accuracy of the figures which the chief engineer of the railway company had reported as being due by the railway company to plaintiff, and refused to recognize the same or to be bound thereby. Plaintiff and defendants, wishing to settle this difference in an amicable manner, entered into the following agreement or contract: "In consideration of * * * eight thousand dollars to me paid by Messrs. Susong & Co., for the * * * Railway Co., * * * I hereby agree to await the payment of the balance due me by said company for work done by me in grading the railroad of said

company * * * until the said work shall be measured, and the value thereof computed by two competent engineers, one to be selected by Susong & Co., and one by myself, with an umpire: said work to be measured and computed as soon as may be practicable, and in accordance with the specifications of the contract entered into between myself and the said railway company under which said work was done. And I hereby promise and bind myself to accept and receive the balance which is shown to be due me by said report of said engineers in full discharge of all claims against said Susong & Co., and against said railway company, by virtue of said contract or any other contract made by me, or for me, or in my behalf.

"Witness my hand and seal this January 28th, 1887.

"(Signed)  W. E. SULLIVAN, [L.S.]

"Test: G. G. WELLS."

"In pursuance of the foregoing agreement we, the undersigned, do hereby select the following engineers to make the measurements and valuations therein provided for, to wit, the said W. E. Sullivan selects St. John Cox, and the said Susong & Co. select I. H. Harrison, and W. A. Jones and G. P. Sullivan are hereby chosen as umpires.in case they are needed; and the said Susong & Co. agree to abide by the report of said engineers, and to pay the balance found due to said W. E. Sullivan by their report, when the same is rendered, or within a reasonable time thereafter, and the parties hereto are to bear the expenses of said measurement, valuation, and report equally. January 28, 1887.

"(Signed)  W. E. SULLIVAN.
SUSONG & CO.

"Test: G. G. WELLS."

This was a new contract, direct between plaintiff and defendants. They had the right to make it. The object of this contract was, on the side of the plaintiff, to get eight thousand dollars ($8,000) in cash, and of both parties to agree upon some amicable method whereby the differences between them might be adjusted, and a final settlement reached. As I construe this contract, the only duty the two engineers had to perform was to measure the work done by plaintiff, and compute the amount due him therefor, "in accordance with the specifications of the con-

tract" under which plaintiff did the work for the railway company. Plaintiff was not forced into this last contract; he wanted money, and went to Susong & Co. for it. Whether or not he could have, by an action at law, compelled Susong & Co. to pay him the full amount due, and inclusive of the $8,000 they have paid, need not be considered. He did not sue, he did take $8,000 from Susong & Co., paid in cash, and he took it upon the promise that he would wait for the balance until his work was measured by two civil engineers, and its value computed, and bound himself to receive, in full discharge of his demand, the amount so found to be due to him.

St. John Cox, one of the engineers selected to measure and compute the work, as provided for in the contract between the plaintiff and defendants, left the State because of bad health, and never performed the duties of his appointment. It was not Mr. Cox's fault that he got sick, and his failure to act was not occasioned by either plaintiff or defendants, and neither should suffer prejudice therefrom. Susong & Co., claiming that Mr. Cox was their selection in the first instance, and upon his failure to serve, that they had the right to select another engineer to take Mr. Cox's place, selected Mr. H. M. Ramseur. Defendants did not *consult* or *notify* plaintiff of their attempt to substitute Mr. Ramseur in Mr. Cox's place. Thus appointed, Mr. Ramseur, with Mr. Harrison, went over plaintiff's work, and in papers addressed to Susong & Co., Mr. Ramseur reported that plaintiff's work on the Hamburg and Johnson section was worth $13,977.78½, and on the Ninety-Six and Cokesbury section plaintiff's work was worth $4,899.50. At the bottom of these papers appear the words, "Verified. I. H. Harrison."

On March 14, 1887, plaintiff served a written notice on defendants, notifying them that he had appointed Maj. T. B. Lee, in place of St. John Cox, to carry out the provisions of the agreement, &c. Defendants paid no attention to this notice. I hold that neither plaintiff nor defendants could, under their written agreement, make a second selection or appointment of a civil engineer. The first part of the agreement, so far as it refers to engineers, provided that "the work shall be measured, and the value thereof computed, by two competent civil engineers." The

manner in which the engineers were to be selected was agreed upon as a means to an end. The second part of the contract named the engineers, and ended the *selecting* business. The second part exhausted the first part, and there is nothing in either paper which even hints at or indicates that the selecting business, after the parties had once made a selection, should continue. Either party could, with an equal show of right, claim that he could withdraw one of the names agreed upon. The parties agreed to abide by the report of Cox and Harrison. There was no agreement to abide by the report of Ramseur and Harrison, or Lee and Harrison. I hold, therefore, that plaintiff is not bound by the report of Ramseur and Harrison, nor are the defendants prejudiced by disregarding plaintiff's notice that he had appointed Lee.

Defendants attempted to introduce evidence to show that there was an error in the last part of the agreement between plaintiff and defendants, in that the names of the civil engineers had been transposed; that Mr. Cox was the selection of defendants, and Mr. Harrison the selection of the plaintiff. I ruled that this evidence was inadmissible. As defendants' counsel contested this ruling with much earnestness, I will briefly state some of the reasons which induced me to exclude such evidence. It may be as well for me to note, that frequently evidence is held to be inadmissible at a certain stage of the cause, and, later on, is admissible, after the foundation for the same has been laid. I am perfectly willing that the ruling under consideration should rest upon its merits, but this remark applied to other rulings in this case.

I held that evidence tending to support the alleged error was inadmissible, for the following, among other, reasons: 1. I considered it irrelevant. Under my view of the contract, the differences between the parties were to be adjusted by "two competent civil engineers." Each party was to select one, but the moment that selection was made, by the signing of the agreement, each and both of the engineers so selected represented each and both of the parties. If this is correct, what difference could it have made, so far as rights are concerned, which party chose Cox and which party chose Harrison? Had it been alleged that the name of some third engineer, not the choice of either party, had by

mistake been inserted in the agreement, then it might be proper to reform the paper. 2. Because parol testimony is inadmissible to vary, add to, or alter a written instrument, which, in itself, is plain and free from doubt. The writing "being the act and instrument of the parties finally and solemnly agreed upon, no other words than those found therein can be added to it, or substituted in their stead by oral testimony. Nor can oral testimony of a previous colloquium, or of conversation, or declarations at the time when completed, or afterwards, be offered to explain it; On the contrary, the instrument must stand upon its own terms." *Railway Co.* v. *Seigler*, 24 S. C., 129; *Arnold* v. *Bailey*, *Ibid.*, 494. 3. Because plaintiff objected to the introduction of the evidence, and there was no allegation in the answer which made this error an issue in the cause.

I find as a matter of fact, that the agreement between plaintiff and defendants, of January 28, 1887, was not carried into effect because of the failure of engineer Cox to act, and that neither of the parties to said agreement is responsible for such failure.

Plaintiff claims as the result of said failure, that he is remitted to his original contracts with the railway company, and that defendants should pay him the amounts due, with interest, on the final estimates of the chief engineer of the railway company, and that the $8,000 paid him by Susong & Co. should be charged against him as a payment on the amount so due. Defendants claim, that as a result of their agreement, and under the present circumstances of the case, that plaintiff can only recover the value of his work, less the payments made. In other words, plaintiff's claim is for the value of his services rendered to the railway company, and that he can recover the value of his work and no more.

I have held that the contract of January, 1887, was a valid contract. Through no fault of the parties, that contract has not been carried out. In my opinion, this case comes before the court as all other cases of disputed or unsettled contracts do, and the court must settle the matter. Plaintiff cannot keep Susong & Co.'s money and stand upon his contract with the railway company too. Nor can Susong & Co. repudiate the terms of their contract with plaintiff, wherein they agreed to pay plaintiff for the work he had done, according to scale of prices named in the

contracts with the railroad company. Plaintiff's contract with Susong & Co. re-opened the contract with the railway company as to the quantum of plaintiff's work, and did not touch the scale of values. This action is not for the specific performance of the contract of January, 1887 ; it is for the collection of money, and the court, carrying out the contract of the parties as nearly as it can, and in accordance with substantial justice, should ascertain and fix the amount and classification of the work done by plaintiff, ascertain the value thereof according to the scale of prices, and award judgment in favor of plaintiff for the sum then found to be due.

I have no hesitation in reaching my conclusions upon this question. Let us take the Ninety-Six and Cokesbury section. Chief engineer Kirk, in his final estimate, certified that plaintiff's work on said section was worth $8,126.31, and the railway company actually paid all of this amount to plaintiff except a balance of $1,326.31. Ramseur and Harrison fixed the value of plaintiff's work on this section at $4,899.50. It would, from this, follow that, inasmuch as plaintiff had been paid $6,800 for work worth only $4,899.50, plaintiff should refund $1,900.50, that amount, in excess of his dues, having been paid to him. It is hardly to be supposed, and cannot be assumed, that the railway company would have made such a mistake as to pay out $1,900.50 of their money for nothing—make a mistake in a transaction which amounts to 25 per cent. of the total involved in the transaction.

Chief engineer Kirk in his estimate classifies plaintiff's work, stating how much was "earth-work," "solid rock," "loose rock," and "road-crossings and changing public road," and computes the value thereof according to the scale of prices agreed upon, fixing the value of the "road-crossings and changing public road" at $132. He fixes the number of cubic yards of all classes of plaintiff's work at 79,544 cubic yards, and says that he included in his estimate extra work done by plaintiff under his orders. Ramseur and Harrison fix the amount of plaintiff's work at "50,-251.3 cubic yards of excavation and embankment," and compute its value by multiplying that number by 9¾ cents. Why should they ignore those classes of work which call for higher compen-

sation, and assume that all of the work done was of the cheapest class, ignore "road-crossings," "changing public road," and "extra work"?

Chief engineer Kirk was the trusted officer of the road. He was familiar with the plan of construction of the road, inspected plaintiff's work while it was being done, and just after it was done, he gave the order for "extra work," and knew the value of such "extra work." Ramseur and Harrison made their estimate in great part from the surveyor's notes months after the work was done, and when rain and storm had damaged it. I am satisfied that chief engineer Kirk's figures are correct, and I therefore hold that Susong & Co. are indebted to plaintiff in the sum of $1,326.31, as the balance due plaintiff on the Ninety-Six and Cokesbury contract.

As to the Hamburg and Johnston section. Chief engineer Kirk estimated and certified that plaintiff's work on this section amounted to 187,456 cubic yards of earthwork, worth $18,276.95, beside "ditching," $110; "building double track S. C. R. R.," $210; "removing obstructions and refilling burrow pits made by Mitchell," $190; "moving twice by order," $200; making total of $18,986.95. These figures were approved by other officers of the railway company. The president approved the first estimate of a part of the work, amounting in value to $11,439.36, and the "members of executive board A. G. & W. Ry. Co." approved the last estimate of the last part of the work, amounting to $7,547.59. Messrs. Ramseur and Harrison report that plaintiff's work on this section amounts to "143,361.9 cubic yards of excavation and embankment," worth $13,977.78½. This report makes no reference, in terms, to "extra work," though in their evidence they say that they allowed for abandoned and changed work in some places.

It will be seen that there is a difference in the number of cubic yards of work done by plaintiff in the estimate of Kirk and of Ramseur and Harrison, amounting to 44,094.1 cubic yards, and a corresponding difference in their estimates of its value. It appears in evidence that a new railway, called the Mitchell road by witnesses, was in process of construction about the time plaintiff was doing his work; that there was some bad feeling between

these two roads; that both roads desired, very frequently, the same location; that Mitchell's road injured and impeded the A. G. & W. Ry. Co. in their work, and that plaintiff was ordered by the chief engineer of the A. G. & W. Ry. Co. to do considerable extra work, made necessary by the conduct of the Mitchell road company. Chief engineer Kirk also required plaintiff to make his "cuts and embankments" wider than the specifications put down in the surveyor's notes. These and other items are included in Kirk's estimates, but are not noticed by Messrs. Ramseur and Harrison, except to the extent I have stated. There was considerable evidence as to railway work being measured by the "centre height method" and the "cross section method," also about "wedge-shaped end" embankments, &c. I don't think it necessary to the ends of justice that I should go into such, to me, "abstruse learning."

I am satisfied that Mr. Kirk's figures are correct, and that plaintiff's work was worth $18,986.95. Deduct from this amount $1,795, the amount plaintiff collected on the notes placed in his hands, and the $8,000 paid by Susong & Co., and the balance due plaintiff for his work on the Hamburg and Johnston section amounts to $9,191.95.

As the result of the contract between plaintiff and defendants, these balances become unliquidated demands, and therefore plaintiff is not entitled to interest on the same.

Wherefore it is ordered, adjudged, and decreed, that plaintiff have judgment in his favor, and against the defendants for the sum of thirteen hundred and twenty-six 31–100 dollars ($1,326.31), and the further sum of nine thousand one hundred and ninety-one 95–100 dollars ($9,191.95), making, in the aggregate, ten thousand five hundred and eighteen 26–100 dollars ($10,518.26); that upon the payment of this amount, with the interest due thereon from the date of the judgment herein, at the date of such payment, the plaintiff do deliver and turn over to the defendants herein all of the uncollected notes now held by him as collateral security; that plaintiff also have judgment against the defendants for his costs and disbursements, to be taxed by clerk of this court.

Upon exceptions to this report the case was heard by Judge Pressley, who filed the following decree:

This was a *legal* action, begun by attachments, but defendants' answer raised equity questions, and the case was referred for action on its issues to James Aldrich as special referee. From his very full, learned, and exhaustive report, I extract these facts, to wit: Plaintiff had finished his work on two contracts for grading with the Greenville, Atlantic and Western Railway Company. As required by said contracts, the engineer of the company had measured the work and reported its value to the company, so that it thereby was in debt to plaintiff to amount of $10,518.26, after deducting all it had paid to plaintiff and all that he had collected on its assets left with him as collateral security. After this debt had been thus settled and acknowledged as a liquidated liability of said company, it transferred all its assets to the defendants, and they then, on December 26, 1886, assumed to pay all the debts of said company, but provided that "the work done and to be done should be measured and valued."

Plaintiff was no party to said contract with defendants, but became so by contract with them on January 28, 1887. He then, in consideration of $8,000, at same time paid to him by defendants, bound himself by writing, under seal, to await payment of his balance "until the said work shall be measured and the value thereof computed by two competent engineers, one to be selected by defendants and the other by plaintiff." Said contract also required umpires, but that provision need not now be noticed. On same day a paper, not under seal, was signed by plaintiff and defendants, which named the engineers chosen by them respectively, but contained a clerical error, in stating that St. John Cox had been selected by plaintiff and I. H. Harrison by defendants. The testimony is altogether conclusive that the said writing reversed the selecting made by said parties. St. John Cox was sick and left the State. Plaintiff and defendants both claimed the right to select another engineer in his stead, and thereupon defendants selected H. Ramseur and plaintiff selected T. B. Lee. The former of these acted with I. H. Harrison in making a remeasurement of said work, but their return and testimony

show that they did not do their work in accordance with plaintiff's contract with the railway company, as the contract under which they were selected required of them. Their estimate, made in total disregard of the differences between rock and earthwork, and of the other specifications of said contract, fixes the amount of plaintiff's claims at very much less than had been reported by the engineer of the railway company.

The special referee, rightly deciding that the measurement of Harrison and Ramseur was not a compliance with the contract between plaintiff and defendants, concluded to hear the testimony of the company's engineer as to the measurement and computation which he had made. He also took the testimony of other witnesses, who say that by reason of damage to the work plaintiff had done, and for other causes, a correct measurement and computation cannot now be made. The order of reference did not authorize the referee to appoint engineers to make the remeasurement, which was stipulated for in defendants' contract with the railway company, and for valuable consideration, to wit, the immediate payment of $8,000 by defendants, was made binding on plaintiff in his contract January, 1887. Thus without authority to order remeasurement, the referee was compelled to base his report in the case on the testimony before him, and he has awarded judgment to plaintiff for the sum of $10,518.26, that being according to the former measurement and computation, after deducting the $8,000 paid to plaintiff by the defendants.

As to the points of law ruled by the referee, I concur with him that the contract between plaintiff and defendant was one for valuable consideration, and still exists in full force; that its effect was to render plaintiff's claim an unliquidated demand that does not bear interest; that after failure of St. John Cox to serve as one of the engineers chosen for the new measurement of plaintiff's work, neither party, without consent of both, had the right to select another engineer in the stead of St. John Cox. But, in my opinion, it is the imperative duty of this court to supply that defect and to order the new measurement, which both contracts expressly call for. No matter that a correct measurement cannot now be made. That was a hazard which plaintiff con-

tracted to incur when he received $8,000 from defendants in part payment for the said work.

It is therefore ordered and adjudged, that the case be recommitted, and that the special referee do require plaintiffs and defendants, each party, to select a suitable engineer for a new measurement of said work. If either party shall object to the engineer chosen by the other, the validity of his objection may be determined by the referee, and he may from time to time, if necessary, require another selection by either party until two competent and suitable engineers shall be appointed. If, within a time to be limited by the referee, such appointment be not so made, then the referee shall choose the engineers and appoint them to said work. He may also limit a time for them to complete their measurement and computation, and be examined on their reports before him at the time appointed. The testimony heretofore taken herein shall be considered as still in the case in any further consideration thereof.

Plaintiff appealed.

*Messrs. Henderson Bros.*, for appellant.

*Mr. W. C. Benet*, contra.

March 8, 1889.    The opinion of the court was delivered by

MR. JUSTICE McIVER.    It seems that the plaintiff, under certain written contracts with the Atlantic, Greenville, and Western Railway Company, had graded two sections of said railway, which contracts, amongst other things, specified the amount per cubic yard, which the plaintiff should be entitled to receive for such work, varying according to the nature of the materials handled; so much for each cubic yard of earth, so much for each cubic yard of loose or soft rock, and so much for each cubic yard of solid rock. These contracts also provided that the work was to be done under the supervision of the chief engineer of the company, and to be paid for according to his estimates. The chief engineer made his final estimates, ascertaining the total amount due plaintiff by the company under these contracts, upon which sundry payments were made by the company, leaving a

considerable balance still due to the plaintiff. At this juncture the defendants entered into a written contract with the railway company, to which contract, however, the plaintiff was not a party, whereby the defendants, for valuable consideration, undertook to pay the debts of said railway company. This contract appears to have been executed on December 21, 1886, but as no copy of it appears in the "Case," we are not informed, except as above stated, of its terms, though it is stated in the decree of the Circuit Judge that, under this contract, the defendants assumed to pay all the debts of the company, but provided that "the work done and to be done should be measured and valued;" and from the fact that the words which we have placed within quotation marks are found within similar marks in the decree of his honor, we infer that the contract was before the Circuit Judge, and that the words quoted were taken from the contract.

The plaintiff claiming that the amount due him by the railway company, which had thus been assumed by the defendants, had been fixed by the final estimates of the chief engineer of the company, and the defendants questioning the correctness of such estimates, and refusing to be bound thereby, with a view to settle this difference the parties, on January 28, 1887, entered into an agreement under seal, a copy of which is set out in the "Case," whereby the plaintiff, in consideration of the sum of eight thousand dollars then paid to him by the defendants, agreed "to await the payment of the balance due" him for the work done on the railroad "until the said work shall be measured, and the value thereof computed by two competent civil engineers," one to be selected by plaintiff and the other by defendants, with an umpire, "said work to be measured and computed as soon as may be practicable, and in accordance with the specifications of the contracts" with the railway company under which the work was done ; and the plaintiff bound himself "to accept and receive the balance which is shown to be due me by said report of said engineers in full discharge of all claims against said Susong & Co. and against said railway company."

On the same day both parties—plaintiff and defendants— signed a paper, not under seal, which reads as follows : "In pursuance of the foregoing agreement we, the undersigned, do hereby

select the following engineers to make the measurements and valuations therein provided, to wit : the said W. E. Sullivan selects St. John Cox, and the said Susong & Co. select I. H. Harrison, and W. A. Jones and G. P. Sullivan are hereby chosen as umpires in case they are needed ; and the said Susong & Co. agree to abide by the report of said engineers, and to pay the balance found due to said W. E. Sullivan by their report when the same is rendered, or within a reasonable time thereafter, and the parties hereto are to bear the expenses of said measurement, valuation, and report equally." Very soon after these papers were signed it was ascertained that Cox, one of the engineers selected, owing to ill-health, was unable to act, and the defendants claiming that Cox was, in fact, their selection (though, as the paper above copied reads, he appears to have been selected by plaintiff), insisted that by a clerical error in the draughtsman of the paper the names were reversed, and assuming that they had a right to supply the place of Cox, named H. M. Ramseur for that purpose, without consultation with, or notice to, the plaintiff.

In pursuance of such appointment, Ramseur and Harrison began the examination and measurement of one section of the work on February 8, 1887, and finished on the 19th of that month ; the other section they began on the 12th and finished on March 18, 1887. They then made their report, fixing the value of the work at a sum much less than that fixed by the final estimates of the chief engineer of the railway company. It seems, however, that in making their estimate they calculated the whole amount of cubic yards at the rate fixed by the original contracts with the railway company for each cubic yard of earth, without taking into account the higher rates fixed by those contracts for loose rock and for solid rock. In the meantime, however, the plaintiff, claiming that he had a right to substitute another engineer in place of Cox, on March 14, 1887, addressed a letter to the defendants, naming T. B. Lee for that purpose, which letter was delivered on the 15th, the next day ; but no notice was taken of it, and Lee never assumed to act.

The plaintiff, declining to recognize the report of the engineers, Ramseur and Harrison, brought this action to recover the balance due on the final estimates of the chief engineer of the

21—30

railway company, after deducting certain payments made by said company, as well as the sum of eight thousand dollars paid to him, as aforesaid, by the defendants on the execution of the agreement of January 28, 1887, alleging that his work was reasonably worth the amount fixed by said final estimates. To this complaint the defendants answered, setting up several defences, which need not be specifically stated here, as the issues raised will be hereinafter considered, so far as they are applicable to the present appeal. By consent an order was passed referring the case to James Aldrich, Esq., as special master, to take the testimony and determine the issues, both of law and fact. In his report the master presents the case so fully and clearly that it should be incorporated in the report of this case. Both parties excepted to this report and the case was heard by Judge Pressley upon the report and exceptions, and his decree is set out in the record, and should likewise be embraced in the report of this case. From this decree the plaintiff appeals upon the several gounds set out in the record, which need not be repeated here, as we propose to consider what we regard as the material issues in the case, without following the several exceptions in the order in which they are presented.

If, as stated by the Circuit Judge in his decree, the contract of December 21, 1886, whereby the defendants assumed the payment of the debts of the railway company, contained a provision that the work out of which the plaintiff's claim arose *should be* measured and valued, we do not see how the plaintiff could maintain an action against these defendants until that provision was complied with. They were not parties to the contracts between the plaintiff and the railway company under which the work was done, for which he is now seeking compensation. They were under no liability whatever to the plaintiff originally, and if they have assumed such liability *upon terms*, it seems to us clear that in order to fix their liability such terms must be complied with. It is manifest that the defendants were unwilling to assume liability for the amount due to plaintiff, as ascertained by the final estimates of the chief engineer of the railway company, and refused to accept such estimates as a proper ascertaiment of the amount of work done by the plaintiff. This being so, the parties

entered into the agreement of January 28, 1887, whereby the plaintiff bound himself to await the payment of the balance due him until the work shall be measured and its value computed according to the specifications of the contracts with the railway company by two civil engineers, to be selected in the manner therein prescribed. So that if there had been any doubt before as to the right of the plaintiff to maintain an action against defendants for the value of the work done by him for the railway company until such work was remeasured, this agreement effectually dispelled such doubt, as such agreement expressly provided that the plaintiff should "*await*" payment until the work was measured and its value computed by two competent civil engineers, to be selected in the manner prescribed in the agreement. It follows, therefore, necessarily that until this was done no action could be maintained by the plaintiff against the defendants, unless it was shown that the performance of the condition precedent to payment had become impossible, or its performance defeated by the fault of the defendants, in which case, doubtless, the plaintiff would be remitted to his original rights, whatever they might be. *United States* v. *Robeson*, 9 Peters, 319; *Holmes* v. *Richet*, 56 Cal., 307; *S. C.* 38 Am. Rep., 54; *Campbell* v. *Am. Pop. Life Ins. Co.*, 1 McArthur, 246; *S. C.* 29 Am. Rep., 591; and *Sullivan* v. *Byrne*, 10 S. C., 122.

It may be that the plaintiff acted incautiously and unwisely in binding himself to await payment of his claim until the work should be remeasured, but he was probably induced to take such action by the present advantage of receiving a cash payment to a large amount; and it seems to us that he cannot fall back upon his original rights without surrendering such advantage, which it does not appear that he has ever done or offered to do. There can be no doubt that the defendants were induced to make this large payment for the purpose of obtaining a remeasurement of the work, and if the agreement of January 28, 1887, has failed from no fault of either of the parties, but from the inability of one of the engineers originally selected to act, as both the special master and Circuit Judge seem to have found, then we think it clear that the plaintiff would not be entitled to maintain an action against the defendants until he had refunded the eight thousand

dollars and thereby placed the parties *in statu quo*. But the Circuit Judge seems to have taken a view of the case much more favorable to the plaintiff, and as his view has not been excepted to by the defendants, probably for the reason that they are willing to pay what may be found due the plaintiff upon what they regard as a proper measurement of the work, as is stated by their counsel in his argument, without insisting that the eight thousand dollars shall be refunded, but that it shall stand as a partial payment on the amount so found to be due, we are not disposed, and perhaps have not the right, to substitute our view for that taken by the Circuit Judge.

It only remains for us to consider whether there is any such error in the conclusion reached by the Circuit Judge prejudicial to the appellant as requires us to reverse it. The special master held that after the parties had made their selection of engineers, under the agreement of January 28, 1887, neither party could supply the place of Cox, who was unable to act, their power of selection being exhausted by its first exercise. He therefore held that the parol evidence offered to show the alleged clerical error or mistake, in designating the names of the persons selected by each of the parties, was irrelevant, being wholly immaterial; and upon this and other grounds stated in his report he ruled out the testimony. The Circuit Judge does not seem to have made any distinct ruling upon this point. But from the fact that he says in his decree that the testimony conclusively showed that there was such clerical error or mistake, we infer that he regarded the testimony as admissible. He held, however, that the estimate made by Ramseur (who had been substituted by the defendants in place of Cox) and Harrison was not made in accordance with the specifications of the plaintiff's contracts with the railway company, as required by the agreement of January 28, 1887, and therefore that such estimate was properly rejected by the special master; and in this we agree with his honor. It seems to us, therefore, that the question as to the admissibility of parol evidence to show a mistake in the designation of the engineers becomes wholly immaterial and need not be considered.

The Circuit Judge further held: "That after the failure of St. John Cox to serve as one of the engineers chosen for the new meas-

urement of plaintiff's work, neither party, without the consent of
·both, had the right to select another engineer in the stead of St.
John Cox.   But in my opinion it is the imperative duty of this
court to supply that defect and to order the new measurement
which both contracts expressly called for." He therefore ren-
dered judgment recommitting the case to the special master, with
instructions to require each party, within a prescribed time, to
select suitable engineers to remeasure the work, and providing
that if such selection be not made by the parties within the time
limited, then that the special master make the selection.   In one
of his grounds of appeal the appellant contends that the court
had no power to make such an order.   But aside from the fact
that such an order is much more favorable to the plaintiff, as we
have seen above, than anything he could obtain under a strictly
legal view of his case, it seems to us that the case of *Hall* v.
*Warren* (9 Ves., 605) affords authority for such an order.

In the case of *Milnes* v. *Gery* (14 Ves., 400), cited by appel-
lant in support of his view, the application was that the court
should appoint a person or persons, in place of the two selected
by the parties to value the estate, who had failed to agree.   There
the proposition was to take away from the parties the right to
make the selection and give it to the court, while here the order
still left it to the parties to make the selection, and it was only
in case of their refusal to do what they had agreed to do, that the
selection is to be made by the court.   We do not think, there-
fore, that the case is applicable.   The other case relied on by
appellant, *Blundell* v. *Brettargh* (17 Ves., 232), does not seem
to be in point.   In that case the agreement was for the sale of
an estate at a price to be fixed by arbitrators, whose award should
be made within a prescribed time.   Before the time limited had
expired, and before the award was actually made, one of the par-
ties died, and the question was whether specific performance of
the award thus made could be required.   We do not understand
that there was any question in that case as to the power of the
court to require the parties to make another selection of persons
to value the estate after the first had failed.

The plaintiff, in one of his grounds of appeal, raises the ques-
tion whether he was not entitled to interest on his demand.   Both

the special master and the Circuit Judge held that the claim of the plaintiff against these defendants was an unliquidated demand, and therefore not entitled to bear interest. In this view we concur, as the amount which the defendants had assumed to pay was clearly unascertained until the work was remeasured.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.