[No. 6,584.—In Bank.]

# H. F. HOLMES ET AL. v. J. RICHET ET AL.

MECHANICS' LIEN—MATERIAL-MAN.—To entitle a material-man to enforce a lien upon a building for material furnished, it must not only be alleged and proved that the materials have been used in the construction of the building, but that they have been, by the express terms of the contract, furnished *to be used* in the building.

ID.—PLEADING—ANSWER—CROSS-COMPLAINT.—If an answer state the facts necessary to constitute a cause of action for a cross-complaint, it is immaterial whether the defendant designates it an answer or a cross-complaint. It is the facts set up in the pleading which makes it the one or the other, and its character will be determined by the Court. Accordingly, in an action for the foreclosure of a mechanics' lien against the owner and the original contractor—where the answer of the latter sufficiently set up a claim of lien against the building—*held*, that the Court rightly construed it as a cross-complaint, and gave judgment for the foreclosure of the lien.

ID.—ARBITRATION—CONDITION PRECEDENT.—It now seems to be the settled law, that an agreement to refer a case to arbitration will not be regarded by the courts, and they will take jurisdiction and determine a dispute between parties, notwithstanding such agreement. But when the agreement is, that the covenantor shall pay such sum, and only such sum, as shall be determined by arbitrators, the procuring an award is as clearly a condition precedent to an action as if the parties had expressly so provided. So *held*, with reference to a contract for the construction of a building, in which it was agreed, that, should any dispute arise regarding the value of extra work, the same should be valued by arbitrators.

ID.—ID.—ID.—The distinction between the two classes of cases stated is, that in the former the parties undertake by an independent covenant or agreement to provide for an adjustment and settlement of all disputes and differences, to the exclusion of the courts; and in the latter, they merely, by the same agreement which creates the liability and gives the right, qualify the right, by providing that, before any right of action shall accrue, certain facts shall be determined, or amounts and values ascertained; and this is made a condition precedent, either in terms or by necessary implication.

ID.—CONTRACT—CONDITION PRECEDENT.—In a contract for the construction

56    307
77    124

56    307
89     88

56    307
99    190

56    307
100   148

56    307
131   520
131   572

56    307
132   160

56    307
e135  526
135   528

56    307
138   260

of a building it was provided, that for each of the payments a certificate should be obtained from the architect, and that at the time of the presentation of any certificate there should not be any liens against the building; and the Court found, that before the presentation of the last certificate a lien was filed, and therefore, that such installment was not due, and refused to allow it; and also decreed that the amount of this lien should be deducted from the amount due the contractor upon former installments also sued for. *Held*, that the Court did not err in refusing to allow the contractor the last installment. That this was according to the effect and meaning of the agreement, and it was simply the duty of the Court to enforce the contract as the parties had made it.

APPEAL from a judgment in the Third District Court, City and County of San Francisco.   McKEE, J.

*Robert J. Hayne*, for Richet, Appellant and Respondent.

It is essential to the right of lien, not only that the materials were used in the building, but that they were furnished to be so used.   (Code Civ. Proc. § 1183; *Bottomly* v. *Grace Church*, 2 Cal. 91; *Houghton* v. *Blake*, 5 id. 240.)

The document pleaded by the defendant Pharo, entitled, answer and cross-complaint, is not a cross-complaint against the defendant Richet, but is merely an answer to the complaint of the plaintiffs. It begins as follows: "Now comes John Pharo, one of the defendants herein, and *answering* the complaint herein, admits and avers," etc. The prayer for affirmative relief does not change the character of the pleading. (*Doyle* v. *Franklin*, 40 Cal. 110; *Kreichbaum* v. *Melton*, 49 id. 55; Code Civ. Proc. § 442.)

The defendant Richet moved to strike out the document as against her. (*Godchaux* v. *Mulford*, 26 Cal. 319.)

With regard to the amount claimed for extra work, there was no compliance with the requirement of the contract as to arbitration, and such compliance was a condition precedent to a right of action. (*Scott* v. *Avery*, 5 H. L. Cas. p. 811; *P. & D. H. C. Co.* v. *Penn. Coal Co.* 50 N. Y. 267; *Hudson* v. *McCartney*, 33 Wis. 344.)

*Van Dyke & Powell*, for Pharo, Appellant and Respondent.

The answer and cross-complaint of the defendant Pharo was sufficient to support the judgment in his favor. (Code Civ. Proc. § 442; *Doyle* v. *Franklin*, 40 Cal. 110.)

Upon the facts found by the Court, the judgment and decree should be modified so as to include the amount of the last installment, $1,400. The Court below deducted the amount of the plaintiff's lien from the amounts due Pharo on previous installments, and the defendant Richet is therefore not in the least prejudiced or injured by that lien.

*S. H. Henry*, for the plaintiffs, Respondents.

The complaint shows that the materials were sold and delivered, and used in, about, and for the construction of the building in question. There can be no material difference between furnishing materials to be used in the construction, and furnishing materials for the construction of a building.

MORRISON, C. J.:

On the 20th day of March, 1876, the plaintiffs filed a complaint in the Third District Court against the defendants to enforce a claim under the mechanics' lien law. The defendant Richet was sued as the owner of the lot described in the complaint, and the building erected thereon; and the defendant Pharo was sued as original contractor. The suit was brought to enforce a lien for certain materials alleged to have been furnished by the plaintiffs, and the allegation of the complaint is, "that the plaintiffs sold and delivered to defendants certain materials, consisting of lime, cement, etc., used in, upon, about, and for the construction, alteration, addition, and reconstruction of a certain building or structure now upon that certain lot and parcel of land" (describing it). The plaintiffs seek to occupy the position of parties furnishing materials for the construction of a building on the lot of the defendant Richet, and the question is, whether the allegations of their complaint bring them within the provisions of the statute. To the complaint, a demurrer was filed on behalf of Richet, one of the grounds of demurrer being "that the complaint does not state facts sufficient to constitute a cause of action against this defendant, or against the property mentioned in the complaint as owned by this defendant."

Section 1183 of the Code of Civil Procedure, concerning the

liens of mechanics, provides, that "every person performing labor upon, or furnishing materials *to be used* in the construction, alteration, or repair of, any mining claim, building, etc., has a lien upon the same for the work or labor done, or materials furnished by each," etc.

The language of the complaint is simply, that the materials furnished by the plaintiffs were used in, upon, and about, and for the construction, etc., of a certain building owned by the defendant Richet, and there is no averment that the materials were furnished *to be used* in the construction of the building. There are two decisions of this Court upon the question of the sufficiency of this complaint. The first is the case of *Bottomly* v. *The Rector, Wardens, and Vestry of Grace Church,* 2 Cal. 90. The Court there says: "The statute never contemplated *that a lumber merchant should have the right of following the* materials which he had sold to another, in general terms, and obtaining a lien upon any building to which the materials had been applied. The language of the act is sufficiently explicit, and must be strictly construed, because it gives rights in derogation of the common law. The materials must not only have been used in the construction of the building, but they must have been, by the express terms of the contract, furnished for the particular building on which the lien is claimed; and to entitle a material-man to enforce such a lien at law, these terms of the contract must be alleged and proved.

"The declaration in this case avers that the lumber was used in the building, etc. This is not only an insufficient allegation, but, standing by itself, it excludes the conclusion which would be necessary to entitle the plaintiff to recover against the owners of the building. It shows upon its face no right whatever in the plaintiff, as against the Rector, Wardens, and Vestry of Grace Church."

In the later case of *Houghton* v. *Blake,* 5 Cal. 240, the same principle was announced, and it was there held, that, "to entitle a material-man to enforce a lien upon a building for materials furnished, it must be alleged and proved that not only the materials have been used in the construction of the building, but they must have been, by the express terms of the contract, furnished for the particular building on which the lien is claimed."

The principle of these cases is entirely in harmony with the letter and spirit of the statute. The language of the Code is, that a party furnishing material *to be used* in the construction of a building shall have a lien. If they were furnished to be used in the construction of a ship, but were in fact used in the construction of a house, the material-man would not, in consequence of the fact that they were so used, have a lien upon a house. In the one case, the law would consider the materials furnished under and in pursuance of the provisions of the Code, and with a view to a lien ; but in the other, not. We are therefore of the opinion that the demurrer to the plaintiffs' complaint should have been sustained.

The defendant Pharo was, as has already been stated, the original contractor, and he was joined as a defendant in the suit. He was a proper party to the proceeding, and had a right to set up in his answer or cross-complaint his claim of lien. It is immaterial what the defendant called his pleading, whether he designated it an answer or cross-complaint, its character will be determined by the Court. It is the facts set up in the pleading which make it an answer or cross-complaint. Pharo makes a claim for extra work, and this claim was allowed by the Court below. The finding is as follows : " That during the progress of the work by defendant Pharo, under said contract, the defendant Richet requested certain alterations and additions to be made to said contract, specifications, and plans, and to said work and materials to be done and furnished under said contract; that no written order was required for such alterations and additions ; that defendant Pharo performed said alterations as requested, and that the extra work and materials done and furnished by defendant Pharo, by reason of said alterations and additions, were settled and agreed on by said Pharo and said architect to be worth the sum of $195 " ; and this amount was allowed by the Court for and on account of extra work done by Pharo. The allowance of this amount is complained of by the defendant Richet, and it is claimed that the allowance was contrary to the terms of the contract. The contract (which is set forth in the findings of the Court) contains the following clause : " Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same

shall be decided by the aforesaid P. Huerne, architect, and his decision shall be final and conclusive; but should any dispute arise respecting the true value of the extra work or works omitted, the same shall be valued by two competent persons, one employed by the owner, and the other by the contractor; and in case they cannot agree, those two shall have the power to name an umpire, whose decision shall be binding on all parties."

It appears from the pleadings in the case, that difficulties had arisen respecting the true value of the extra work, and the question here presented is, Was it not the duty of the parties under the foregoing clause of the contract to have the said extra work valued by two competent persons? The finding of the Court is, that the value of the extra work was agreed upon by the architect and Pharo; but it is claimed that the architect had no authority to bind the defendant Richet by any such agreement. By the terms of the contract, authority was given the architect to decide any dispute that might arise respecting the true construction and meaning of the drawings or specifications, and upon all such questions his decision should be final; but upon the question of extra work, he was not authorized to decide. On the contrary, by the express terms of the contract, such disputes were to be referred to two competent persons, and if they could not agree, the services of an umpire were to be invoked. Was it competent for the parties to make such a stipulation? It has been frequently decided, and now seems to be the settled law, that an agreement to refer a case to arbitration will not be regarded by the courts, and they will take jurisdiction and determine a dispute between parties, notwithstanding such an agreement. But that is not this case. Here the parties simply agreed that the amount or value of certain extra work should be fixed in a certain manner, and was there any right of action in this case for and on account of said extra work until the value thereof was fixed according to the terms and conditions of the contract? In other words, was it not a condition precedent to any right of action, that the value of the extra work should be determined in the mode provided by the contract? This question was very elaborately considered by the Court of Appeals of New York, in the recent case of *The*

*President etc.* v. *The Pennsylvania Coal Company,* 50 N. Y. 250. The Court there says: "The distinction between the two classes of cases is marked and well defined. In one case, the parties undertake by an independent covenant or agreement to provide for an adjustment and settlement of all disputes and differences by arbitration, to the exclusion of the courts; and in the other they merely, by the same agreement which creates the liability and gives the right, qualify the right, by providing that, before any right of action shall accrue, certain facts shall be determined, or amounts and values ascertained; and this is made a condition precedent, either in terms or by necessary implication. This condition being lawful, the courts have never hesitated to give full effect to it. * * * The reports abound in cases in which the principle has been affirmed and applied. See *Herrick* v. *Belknap,* 27 Vt. 673. In *United States* v. *Robeson,* 9 Peters, 319, it was held, that, when the parties in the contract fix on a certain mode by which the amount to be paid shall be ascertained, the party that seeks the enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect; that he cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so. Judge Story, in his work on Equity Jurisprudence, § 1457 *a,* states the rule: 'But under a contract to pay the covenantee such damages in a certain contingency as a third person shall award, there is, in the absence of fraud, no cause of action either at law or in equity, unless the award is made.'"

Referring to the case in 50 N. Y., the Supreme Court of Wisconsin, in *Hudson* v. *McCartney,* 33 Wis. 345, says: A late case in the Court of Appeals (50 N. Y. 250), to which our attention has been directed since the argument in this case, fully sustains the views above expressed as to the general principles of law governing contracts of this nature. The opinion of the Court, by Allen, J., is valuable for the discussion it contains, and the authorities it collects and reviews, and particularly so for the clear and accurate distinction which it draws between those covenants for submission and conditions which are precedent in their nature, and oust the courts of jurisdic-

tion or bar the action of the plaintiff, and those which are not so, and as to which he may have his remedy for the recovery of damages."

This question was very ably considered in the House of Lords, in the case of *Scott* v. *Avery*, H. L. Cas. vol. 5, p. 811. Mr. Justice Coleridge there says: "If two parties enter into a contract, for a breach of which in any particular an action lies, they cannot make it a binding term, that in such an event no action shall be maintainable, but that the only remedy shall be by reference to arbitration. Whether this rests on a satisfactory principle or not, may well be questioned; but it has been so long settled, that it cannot be disturbed. The courts will not enforce or sanction an agreement which deprives the subject of that recourse to their jurisdiction, which has been considered a right inalienable, even by the concurrent will of both parties. But nothing prevents parties from ascertaining and constituting as they please the cause of action which is to become the subject-matter of decision by the courts. Covenanting parties may agree, that, in case of an alleged breach, the damages to be recovered shall be a sum fixed, or a sum to be ascertained by A. B., or by arbitrators to be chosen in such or such a manner; and until this be done, or the non-feasance be satisfactorily accounted for, that no action shall be maintainable for the breach." And in the same case, Lord Campbell said: "There is an express understanding that no action shall be brought until the arbitrators have decided, and there is abundant consideration for that in the mutual contract into which the parties have entered; therefore, unless there is some illegality in the contract, the courts are bound to give it effect. There is no statute against such a contract; then, on what ground is it to be declared illegal? It is contended that it is contrary to public policy; that it is a rather dangerous ground to go upon; I say that, with great deference to your Lordships, after the view that was taken in a very important case lately decided in this House; but what pretense can there be for saying that there is anything contrary to public policy in allowing parties to contract that they shall not be liable to any action until their liability has been ascertained by a domestic and private tribunal, upon which they themselves agree? Can the public be

injured by it? It seems to me that it would be a most inex-
pedient encroachment upon the liberty of the subject if he were
not allowed to enter into such a contract."

It is true, that the contract in this case does not declare that
no action shall be brought until the amount of damages has been
fixed; but that is the meaning and legal effect of the contract.
In the case (50 N. Y.) referred to above, it is said: " When, as
here, the agreement is, that the covenantor shall pay such sum
and only such sum as shall be determined by arbitrators, the
procuring an award is as clearly a condition precedent to an
action as if the parties had added, ' and no action shall be main-
tainable until after the award of the arbitrators.' Such a clause
would be surplusage, and its insertion a work of supererogation.
Mr. Justice Crowder, in making response to the question pro-
pounded by the Lords to the Judges in *Scott* v. *Avery,* thus
states the question and the answer to it: ' Can a ship-owner and
an insurer enter into a valid agreement that the ship-owner
shall pay down a given sum, and that in consideration of such
payment the insurer, upon the loss of a given ship, shall pay to
the said owner, not the amount of loss sustained by her through
the perils of the sea, but only such sum of money as shall be
settled and ascertained by arbitration. I am not aware of any
legal objection to such a contract, whatever may be thought of
its prudence. And I think the effect of such a contract is, that
no action lies for the breach of it, until the sum has been ascer-
tained by arbitration.' The judge lays no stress upon the form
of the contract, but regards the provision for determining the
amount to be paid by arbitration as, in legal effect, postponing
the right of action until after the award is made."

In view of the foregoing authorities, and the principle they
announce (which we believe to be correct), no right of action
accrued to the contractor for the extra work done by him, until
the same was valued, or some good and sufficient excuse for a
failure to value the same in accordance with the agreement was
shown. In this case, no valuation was made, and no reason is
shown for a failure to make such a valuation. We are, there-
fore, of the opinion that the contractor was not entitled to
recover anything for extra work.

There is one other point in the case which we will now pro-

ceed to notice. The contract provides that payments shall be made in installments, as the work progresses; and also provides "that for each of said payments a certificate shall be obtained from and be signed by the architect; and also, that at the time of the presentation of either of the said certificates there be neither opposition against the said payments, nor any liens against the aforesaid building." The Court finds, that, before the fifth and last installment became due, a lien was filed upon the building, and therefore such installment was not due and payable according to the terms of the contract. The Court also decrees, that the amount of this lien shall be deducted from the amount due the contractor at the time suit was brought; and it is claimed that the order of the Court deducting the amount of this lien from the amount due the contractor operated as a *payment and discharge of said lien*, and therefore the fifth and last installment was due and payable. It is a sufficient answer to the argument made in support of this proposition, that the parties have expressly contracted, that, if any lien upon the property shall exist at the time when an installment would be otherwise due and payable, the existence of such lien shall constitute a good and sufficient reason for the non-payment thereof. This we understand to be the effect and meaning of the agreement, and it is simply the duty of the Court to enforce contracts as the parties have made them. There was no error, therefore, in the decision of the Court below refusing to allow the contractor the fifth installment.

Judgment reversed, and cause remanded for further proceedings, in accordance with this opinion.

Ross, J., Myrick, J., and McKinstry, J., concurred.

Thornton, J., and McKee, J., concurred in judgment.