AMERICAN–PACIFIC CONST. CO. v. MODERN STEEL STRUCTURAL CO.†

(Circuit Court of Appeals, Ninth Circuit. March 9, 1914.)

No. 2272.

1. CONTRACTS (§ 39*)—PROPOSALS AND ACCEPTANCE—WHEN COMPLETED CONTRACT.

The proposal constituting a part of a contract provided for the furnishing by plaintiff in accordance with drawings and specifications furnished by S. of the structural steel and iron and reinforcing steel with specified exceptions for a theater and office building at a specified location to be delivered within specified periods after plaintiff's receipt of approved working detail drawings signed by S., for $77 a ton. The specifications recited that S. was under contract with the architect to furnish those parts of the plans and specifications relating to the iron and steel frame and reinforced concrete work, described the building as 145 by 120 feet, 8 stories high above the sidewalk, with a basement 20 feet and 3 inches below the ground, and gave the general plan of construction, the kind of material required, and the character and finish thereof in minute detail. The specifications were the same specifications forming a part of the contract between defendant and the owner of the building. Held, that the proposal and acceptance constituted a completed contract, though the entire drawings for the building were never furnished by S.; it being apparent that it was contemplated that S. should work up the drawings from the general plans drafted by the architect and that it was not contemplated that they should have been made and completed prior to the making and acceptance of the proposal.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 156–159; Dec. Dig. § 39.*]

2. CONTRACTS (§ 40*)—REFERENCE TO OTHER PAPERS—SPECIFICATIONS. .

Where the specifications forming a part of a contract were identified therein by their initialing by one of the parties, this was tantamount to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

211 F.—54          † Rehearing denied May 25, 1914.

attaching them to the contract and rendered the contract equally definite and certain.

,[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 155; Dec. Dig. § 40.*]

3. SALES (§ 369*)—BREACH OF CONTRACT—REMEDIES OF SELLER.

Where defendant broke a contract by which plaintiff was to furnish and .fabricate the structural steel and iron for a building by directing plaintiff to discontinue the further fabrication thereof, and by refusing to allow plaintiff to proceed, plaintiff was not required to split up its ·demand and sue for the steel already fabricated, shipped, and delivered, as for material sold and delivered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1083, 1084; Dec. Dig. § 369.*]

4. SALES (§ 383*)—BREACH OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an action for breach of a contract to furnish and fabricate the structural steel and iron for a building by the buyer, evidence as to the manufacture and delivery of 39¼ tons of steel and iron, and that the steel and iron contracted for would amount to about 1,500 tons, and that plaintiff had provided for the purchase of steel sufficient therefor and made the necessary preparations to fabricate the entire quantity, placed before the jury sufficient data on the question of damages to support a recovery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1097; Dec. Dig. § 383.*]

5. SALES (§ 379*)—ACTIONS—ISSUES,· PROOF, AND VARIANCE.

In an action for breach by the buyer of a contract for the furnishing and fabrication of the structural steel and iron for a building, there was no variance between the complaint which alleged the agreed amount to be delivered as 1,500 tons and evidence tending to show that the amount would aggregate about 1,500 tons; the exact amount not being ascertainable until it was fabricated and weighed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1094; Dec. Dig. § 379.*]

6. ARBITRATION AND AWARD (§ 8*) — AGREEMENT TO ARBITRATE — EFFECT ON RIGHT OF ACTION.

A provision in a contract that in case any difference of opinion should arise in relation to the contract, or the work to be or that had been performed, such difference should be settled by arbitration, fell within the general rule that an agreement to refer a case to arbitration will not be regarded by the courts and that they will take jurisdiction notwithstanding such an agreement.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 29; Dec. Dig. § 8.*]

In Error to the District Court of the United States for the First Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by the Modern Steel Structural Company against the American-Pacific Construction Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an action to recover damages for breach of an alleged contract for the fabrication and delivery of certain structural steel. The complaint alleges, in effect, that on or about the 19th day of January, 1907, plaintiff and defendant entered into a contract by the terms of which plaintiff agreed with the defendant to furnish material and to fabricate all the structural steel and iron required by the plans and specifications for a new building to be erected by the defendant for the Richelieu Realty Syndicate, known as the Columbia Theater, at the southeast corner of Geary street and Van Ness

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

avenue, in the city and county of San Francisco, and to deliver said material when fabricated to the defendant, f. o. b. cars, San Francisco, Cal., at the agreed price of $77 per ton.

The plaintiff owned and operated a factory for fabrication of structural steel and iron at Waukesha, Wis., and the structural steel and iron for this building were to be fabricated at its factory and shipped to the defendant at San Francisco. It is alleged that, after plaintiff had fabricated and shipped the defendant 39¼ tons of steel and iron, defendant directed plaintiff to discontinue work under the contract, and has since refused to permit plaintiff to proceed therewith, and damages are claimed in the sum of $35,164.17 for the breach of the contract.

The contract in question consists of a proposal in writing on the part of the plaintiff and an acceptance on the part of the defendant. The terms of the proposal, in so far as they are concerned for present inquiry, are as follows:

"We propose to furnish you in good order the following described structural material, constructed in a workmanlike manner, described as follows and in accordance with drawings furnished by Jos. D. Smedberg. and specifications also furnished by Jos. D. Smedberg, standard specifications to govern, identified with marks.

" 'Copy #1,' initialed, 'S. E. H. 12/30/06,' except as noted under 'Remarks' on sheet #2 attached.

"Namely, the structural steel and iron and reinforcing steel (except the grillage beams, bolts, separators, and column bases mentioned on page 3 of specifications referred to above), for the Richelieu Realty Syndicate Theater and Office Building, known as the Columbia Theater; Location—Southeast corner of Van Ness Ave. & Geary St., San Francisco, Cal.

"Delivery, as follows: That portion indicated by Mr. Smedberg, shown within red lines on blueprint 3-S, 4-S, 7-S, dated by us on the back of print as received Dec. 31, and 8-S, dated by us on the back of print as received Jan. 3, 1907, required to begin erection of steel work on stores, to be shipped from our shop 30 days from our receipt of approved working detail drawings, signed by Mr. Smedberg.

"Balance of steel shipments to be 60 to 90 days from our receipt of balance of approved working detail drawings, signed by Mr. Smedberg. * * *

"Price to be seventy-seven ($77.00) dollars per ton. Freight allowed to San Francisco, Cal. Correct figured weights of steel to govern amount of sale and all steel work to be accepted at our works by Mr. Smedberg, or his authorized agent.

"Terms of payment as follows: 30 days net cash from date of invoices."

The specifications referred to in the proposal, together with the preamble, in so far as it is necessary to set them forth here, are as follows:

"In order to understand the business relations involved in the following specifications, some explanation of them is necessary.

"Mr. Joseph D. Smedberg, the consulting engineer, is under contract with Mr. Frank T. Shea, architect, to furnish those parts of the plans and specifications for the building which relate to the iron and steel frame and reinforced concrete work.

"He is also under contract with the Richelieu Realty Syndicate to supervise the inspection, to superintend the erection of the steel frame work, to check all bills rendered by the contractors for this portion of the work, and, in general, to see that all the contracts relating to this part of the building are faithfully fulfilled. The contract for the iron and steel work will be let on a pound basis erected. * * *

"General. The steel construction described in these specifications is that for a new office building and theater, southeast corner of Van Ness avenue and Geary street, San Francisco, Cal. The building is in plan 149'x120' 0", and is eight stories high above the sidewalk, with basement extending 20' 3" below ground. (Datum.)

"The plan of construction is as follows: The general plans for the theater portion of the building being incomplete still, the intention is to erect the office building portion first and especially rush work on the first section columns, first and second story beams and sidewalk beams. Open holes in columns, beams and girders for connecting theater cantilevers, etc., will be

drilled in the field, as arrangement of theater framing cannot be determined accurately at present, and this method will not delay any portion of the office building construction, due to lack of information regarding connection. * * *

"Specifications Explained:

"These specifications are supplemental to the contract already entered into for the constructional iron and steel work of this building, between the American-Pacific Construction Company, parties of the first part, and Richelieu Realty Syndicate, parties of the second part. They are the specifications referred to in the said contract, and which are to be considered a part of that contract.

"These specifications are intended to cover all the structural iron work for frame and reinforced concrete in said building. They are intended to co-operate with the drawings for the same, both those furnished by the architect, and those furnished by the engineer, as hereinafter specified, and what is called for by either is as binding as if called for by both. They are intended to describe and provide for a finished piece of work. * * *

"Drawings:

"The general dimensions, arrangements and sections required for the structural iron work herein specified are shown on the general structural iron drawings prepared and furnished by the engineer.

"The sections given are those of the Carnegie Steel Company's manufacture In general, these drawings are made to scale, but scale dimensions must never be used. These drawings, together with these specifications, are the property of the architect, to whom all copies must be returned on the completion of the work. Detail or shop drawings required by the contractor, including drawings of every part and piece of the work, with all the lists, schedules, indexes, erection plans or other directions necessary for the proper manufacture, finish and erection of the work covered by these specifications and the said general drawings will be made and furnished by the engineer."

Other specifications are set out under headings following: "Kind of Material Required," "Character and Finish of Materials," "Painting," "Inspection," "Beams," "Columns," "Riveted Girders," "Castings," "Rivets," etc.

The judgment was for plaintiff, and the defendant prosecutes error to this court.

William F. Humphrey, of San Francisco, Cal. (Lent & Humphrey, of San Francisco, Cal., of counsel), for plaintiff in error.

Seneca N. Taylor, of St. Louis, Mo., and Wright & Wright & Stetson, of San Francisco, Cal., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] Prior to the making of the proposal and its acceptance, the parties had been in negotiation touching the subject-matter thereof in anticipation of defendant entering into a contract with the Richelieu Realty Syndicate for furnishing the iron and steel for its building and setting the same in place; and about the same time the proposal was accepted the contract for such work was entered into between these parties. The fact that such a contract was entered into has its bearing upon the question whether the alleged contract in controversy was ever legally consummated. Indeed, the specifications made part of the alleged contract are the specifications which were a part of the contract between the defendant and the realty syndicate. It is in fact conceded by the plaintiff, through its president, that the architect's original plans were incomplete at the time the alleged contract was consummated, and consequently at the time plaintiff began work fabri-

cating the steel and iron for the structure. Nor were the architectural designs for the general plan of the theater portion of the building made. The theater constituted perhaps one-half of the proposed combined office and theater structure.

Now, the strong contention of the defendant, or plaintiff in error, is that the proposal and its acceptance do not constitute a valid contract between the parties, because the drawings alluded to in the proposal were never made, nor were the specifications ever completed, and therefore there was no means of knowing or determining the character and quantity of steel to be furnished. This question is adequately raised by objections to the admission of the proposal and specifications in evidence.

The questions to be determined are whether the alleged contract is sufficiently definite and certain in its description of the materials to be manufactured and furnished, and, as it relates to quantity, whether it was susceptible of being executed in accordance with the intention of the parties. If it was, any breach in either direction would afford cause for damages.

By reference to the proposal, it will be seen that the material to be furnished is specifically described as the structural steel and iron and reinforcing steel (excepting certain items) for the Richelieu Syndicate Theater and Office Building, known as the Columbia Theater, designating its location. The specifications are even more specific in this respect. The steel construction described in these specifications is that for a new office building and theater, southeast corner Van Ness avenue and Geary street, San Francisco, Cal. The building is in plan 149x120 feet, and is 8 stories high above the sidewalk, with basement extending 20 feet 3 inches below ground. The general plan of construction is then delineated, and the kind of material required, and the character and finish thereof are specified in minute detail. So that there can be no mistake, in construing these two instruments together, touching the material to be manufactured by the plaintiff and furnished to the defendant for the construction of the theater building.

If it were not for the fact that the proposal recites that the structural material shall be in accordance with drawings furnished by Jos. D. Smedberg, and specifications also furnished by Jos. D. Smedberg, identified with certain marks, there could be no question that the general descriptions contained in these two instruments would sufficiently identify the materials to be manufactured to make the contract valid in all respects. Do these recitals render the contract indefinite?

The specifications were identified and introduced in evidence. There can be no doubt that they are the specifications alluded to in the proposal. The entire drawings for the completed building were never furnished by Smedberg. It seems to have been contemplated that Smedberg should work up the drawings for the iron and steel frame from the general plans drafted by Shea, the architect. This is apparent from the preamble of the specifications. From these general drawings the evidence shows that detail drawings for the work

were to be made in the shop and by the plaintiff, but to be approved by Smedberg.

From a construction of the proposal and the specifications as a whole, we are satisfied that it was never contemplated that the drawings to be furnished by Smedberg should have been made and completed prior to the making and acceptance of the proposal, but that such drawings should be made by Smedberg and the detail working drawings approved by him in the way of furthering the work of fabrication of the steel and iron to be furnished under the proposal. This is borne out by the stipulations contained in the proposal touching the time in which the fabricated steel and iron is required to be shipped; that is to say, from 30 to 90 days from receipt of "approved working detail drawings, signed by Mr. Smedberg."

We are of the opinion, therefore, that the drawings referred to, which were work to be furnished by Smedberg, were to state additional details touching the material to be furnished which was otherwise more comprehensively described in the contract, and we think sufficiently described so that its identification was easily and unmistakably ascertainable. It must be remembered that the proposal was to furnish steel and iron by its weight, and not to furnish any specific and predetermined pieces of given sizes and dimensions, and we believe, as previously indicated, by contemplation of the parties it was designed that the detail drawings should be taken care of in the future, and the plaintiff was to furnish the steel and iron in quantity in accordance with those details.

We are aware that the minds of contracting parties must draw together and become as one touching the subject-matter and the terms and conditions before a contract can be consummated. But in the present case that is what was done, and the purpose of the parties was defined with sufficient definiteness that there can be no mistake as to their intention touching the steel and iron to be fabricated and delivered.

[2] It is next insisted that the contract was not legally consummated because the drawings and specifications were not attached to the proposal. What we have said heretofore disposes of the proposition as it relates to the drawings. It was never intended that they should be attached to the proposal. As it respects the specifications, they were definitely and sufficiently identified by their initialing by the president of the plaintiff company. This is tantamount to attaching them to the contract, and renders the contract equally definite and certain.

[3, 4] Another objection urged is that no damage is shown under the evidence. This presents a question hardly reviewable, in view of the certificate of the trial judge settling the bill of exceptions, because it does not appear that all the testimony submitted at the trial is contained therein. Copper River & Northwestern Ry. Co. et al. v. Reeder, 211 Fed. 280, 127 C. C. A. ——, decided at this term of court. Beyond this, however, counsel presents the view that the action should have been for material sold and delivered, having reference to the 39¼ tons of steel fabricated, shipped, and delivered to the plaintiff at San Francisco, as shown by the evidence. This over-

looks the fact that the defendant breached its contract by directing the plaintiff to discontinue the further fabrication of steel and iron, and refused to allow it to proceed further in fulfillment of its undertaking. The plaintiff was not required to split up its demand, and sue in one form of action for a part and in another for a part. Indeed, if the plaintiff had sued as counsel suggest, the question might have arisen whether it thereby waived its action for breach of the contract. However this may be, there was ample testimony adduced to go to the jury upon the question of damages. Beyond the fact of the manufacture and delivery of 39¼ tons of steel and iron, there was pertinent evidence tending to show that the steel and iron contracted to be fabricated would amount to about 1,500 tons, that the plaintiff had provided for the purchase of steel in quantity to conform to this demand, and that it had made the necessary preparations in and about its mill to fabricate the entire quantity covered by the contract. The necessary data were placed before the jury presenting a question of damages for their determination. About the result as to the quantity of damages, reasonable minds might differ. But there was absolutely no question that the plaintiff, under the testimony, was entitled to some damages. So that counsel's contention on this phase of the controversy cannot be maintained.

[5] A variance is suggested between the complaint and proofs in that the complaint alleges that the agreed amount of the steel to be delivered was 1,500 tons, and that there was no proof of any contract or agreement to deliver that amount. We have already seen that there was a valid contract entered into between these parties. The exact amount of steel in tonnage was not ascertainable until the steel was fabricated and weighed. There was ample proof tending to show that the amount would aggregate about 1,500 tons. Some witnesses thought it would be much less. But there is no room for saying that the proof in this respect is a departure from the allegations of the complaint. The objection is therefore without merit.

[6] Lastly, the question is presented whether an action will lie, in view of a clause contained in the proposal for the submission of differences to a board of arbitration. The clause is as follows:

"In case any difference of opinion shall arise between the parties to this contract in relation to the contract, the work to be or that has been performed under it, such difference shall be settled by arbitration by two competent persons, one employed by each party to the contract, and these two shall have the power to name an uninterested umpire whose decision shall be binding on all parties to the contract."

This stipulation falls within the general rule laid down in Holmes v. Richet, 56 Cal. 307, 38 Am. Rep. 54, and not the exception. The general rule is, using the language of that case, that:

"An agreement to refer a case to arbitration will not be regarded by the courts, and they will take jurisdiction and determine a dispute between parties, notwithstanding such agreement."

This answers the four objections presented and insisted upon by counsel in their revised and supplemental brief, and, finding them not well taken, the judgment below will be affirmed.