[Civ. No. 5977.   First Appellate District, Division Two.—January 20, 1928.]

## H. D. BOWMAN, Respondent, v. MARYLAND CASUALTY COMPANY (a Corporation), Appellant.

Bicksler, Smith & Parke for Appellant.

Gibson, Dunn & Crutcher, H. F. Prince and Homer D. Crotty for Respondent.

KOFORD, P. J.—This was an action brought by Bowman, plaintiff, the owner, against defendant Newcomb, the contractor, and defendant Maryland Casualty Company, surety company, upon the faithful performance feature of a bond given under Code of Civil Procedure, section 1183, for the construction of the Westinghouse building in the city of Los Angeles. The action was consolidated with many mechanics' liens foreclosure suits. The liens were determined in amount, paid or provided for by the judgment and none of the lien claimants are appellants herein. The judgment determined many points of dispute between the owner and contractor and was in a general way like an accounting between the owner and contractor. The full contract price was $330,000. In the settlement made by the judgment, compensation for extra work and material was allowed to the contractor in the sum of $5,441.66 and deductions from the contract price on account of work and material omitted were allowed in the sum of $15,285.40. These extras and deductions changed the total contract price named in the contract to $320,156.26. The amount of progress payments which had been paid to the contractor at the time of suit was $285,150. The balance of the reduced contract price remaining in the hands of the owner was by the judgment distributed as follows: Allowed to the owner attorneys' fees, $2,500; damages for defective performance of work on front of building, $6,000; damages due to delay in completing the building, $12,041.25; damages for defective performance of work on first floor, $4,000. The balance then remaining in the hands of the owner being $10,465.01 was ordered distributed amongst the lien claimants *pro rata*. The lien claimants for the unpaid part of their claims were given liens against the owner's property and judgments against appellant surety company by virtue of the lien feature of the bond.

The points presented by the appellant on this appeal are as follows: First, it is claimed that the extras and deductions agreed upon between the owner and contractor and in some

instances even the breaches of contract by the contractor amounted to such a change of and departure from the terms of the written building contract as to release and discharge the surety from its obligation upon the faithful performance bond. Second, objection to deducting owner's damages for breaches from the contract balance before all liens were paid out of that balance. Third, certain objections to the specific items of extras, deductions and damages. Fourth, objection to the allowance by the court of actual damages for delay instead of liquidated damages provided for by the contract.

The main point of appellant is that the extras and deductions verbally agreed upon between the owner and contractor and not in writing as provided for by the written contract, constituted such a change in the contract as to release the surety. This point has been disposed of by the case of *Roberts* v. *Security Trust & Savings Bank*, 196 Cal. 557 [238 Pac. 673], which was decided after appellant's opening brief was filed herein. It was there held that the failure of the owner and contractor to comply with procedural requirements with regard to deductions and extras was not such a change in the contract as would release the surety company on its faithful performance bond. We think the action of the owner and contractor in the instant case in verbally agreeing to the extras and deductions instead of in writing as contemplated by the contract amounts only to a failure to comply with procedural requirements and under the authority referred to does not have the effect of releasing the surety company upon its bond. The building contract, article fourth, and paragraph 22 of the specifications expressly provided for extras and deductions and consequent modification of the total contract price without expressed limit in amount although it also provided that this should be done in writing. The contract in specifying the full contract price also says "$330,000, subject to additions and deductions as herein provided." Therefore, the building changes were not changes in the contract nor departures from the contract, but, on the contrary, they were expressly contemplated and provided for in the building contract upon which appellant became surety. Such action was only a breach of procedure provided by the contract which consisted of following a different method of doing the things which the contract provided might be done. In addi-

tion to this, there is a further reason why such failure to comply with the procedural requirements of the contract does not release the surety. The court expressly found in finding number 53 that it was through no fault or neglect of the owner that such procedural requirements were not followed but was due entirely to the fault and neglect of the contractor. It was not so much a change then as a breach and that breach was made by the contractor of the very contract for the faithful performance of which by him the surety company had agreed to become liable.

This finding (number 53) is attacked as being too general and not specific enough to respond to the pleading of appellant. We quote it for this reason and also because of the facts which it sets forth.

"That during the progress of said work in the construction of said building it became necessary to add certain extra work not included in the original plans and specifications; or to omit certain work therefrom; that when said extras or omissions were desired the plaintiff, H. D. Bowman, instructed the contractor, Newcomb, to submit estimates for the price of said extras, or reductions for omissions, some of said instructions being in writing and some of said instructions being oral; that in certain cases said contractor Newcomb submitted prices for proposed extras or deductions before said extra work was commenced or omissions made, and in other instances the extra work was done by said contractor Newcomb for omissions made before he had submitted the price therefor to the plaintiff, H. D. Bowman; that the failure of said H. D. Bowman and Earl B. Newcomb to agree upon the price of all or any of said extras or the method of determining the price of all or any of said extras before the said extra work was done or the allowance for omissions, was not caused through any fault or neglect of the plaintiff, H. D. Bowman; that the said H. D. Bowman was at all times ready and willing to take up with the defendant, Earl B. Newcomb, the price of said extras or omissions, but that said Earl B. Newcomb failed and neglected to submit prices or agree upon the manner of determining the price therefor with said H. D. Bowman, but proceeded to complete said extra work or omit work in a number of cases prior to the price therefor or the method of determining the price therefor being fully agreed upon;

that said H. D. Bowman and Earl B. Newcomb did not at any time enter into any contract, written or oral, modifying the written contract of March 1st, 1922, or waive any provisions thereof, and that any departure from the method provided in said contract, plans and specifications for the doing of extra work, or omitting work called for by said contract, plans and specifications, was not caused by the fault or neglect of said H. D. Bowman, and said departures were not material and did not prejudice or affect the liability of the Maryland Casualty Company as surety or hinder or delay in any manner the construction or completion of said building.''

This finding correctly sets forth the material ultimate facts in respect to the subject matter treated, having regard for the fact that the issue was presented for the purpose of showing alleged changes of the contract by the owner of a nature to discharge and release the surety. True, the court might have specified which extras and which deductions were made orally and which in writing, but it is immaterial which ones were and which were not in writing because the judgment is properly the same as to each class.

The amount in value of all the extras and deductions added together, whether made pursuant to writing or not, is not great in proportion to the price of the entire contract. Considering the extras, $5,441.66, allowed by the court and claimed by the appellant in its pleading whether in writing or not, as offsetting in part the total amount of deductions, $15,285.40, the net amount of change in contract price would be less than $10,000 or only about three per cent of the contract price. Of the total amount of deductions allowed, the appellant and contractor conceded a large proportion to be proper deductions to be made.

■ It is claimed that it was error to deduct from the balance of the contract price remaining in the hands of the owner the amount of the several items of damages allowed. It is claimed that the balance of the contract price should be used first for the discharge of liens. *Roberts* v. *Spires*, 195 Cal. 267 [37 A. L. R. 763, 232 Pac. 708], is cited as authority for this contention. In that case it was held to be unfair to lien claimants to thus reduce the contract price without any notice given to them in the contract as recorded because the contract price balance was a fund for the protection of

lien claimants. It was there said, however, that "the owner might well have protected herself against the failure of the contractor to complete the work on time by the insertion of the requisite stipulations in the contract." Here the contract (article 6) specifically authorized the owner to retain sufficient of any moneys due the contractor remaining in the owner's hands to pay damages caused by the contractor's failure to complete the entire work on time. This disposes of the contention in so far as the item of damage for delay is concerned.

Now, as to the other items of damage. Article 20 of the specifications reads as follows: "Deductions for Uncorrected Work: If the Superintendent deems it inexpedient to correct work injured or not done in accordance with the contract the difference in value, together with a fair allowance for damage may be deducted." This provision is an express warrant for deducting from the balance of the contract price damages for uncorrected defective work.

These contract provisions may not embrace all of the four items of damage deducted, but there are further reasons why appellant is not injured by this method. First, this is a matter for the lien claimants to object to, but they are not objecting. They are evidently content with their liens upon the owner's real property and personal judgments against the contractor and surety. Second, it does not injure the appellant, because had the court followed the method contended for by appellant and first deducted mechanics' liens and only applied the balance of the contract price to the owner's damages, a money judgment would result in favor of the owner against the surety company in exactly the same amount as the lien claimants' liens and judgments against the surety company would be thereby reduced. In other words, if the contract balance was given to lien claimants their judgment against the surety upon the mechanic's lien feature of the bond would be reduced to that extent; but, on the other hand, if the owner was not thus permitted to offset his damage against the contract balance in his hands, but was required to turn that balance over to the lien claimants, he would recover a judgment against the surety for such damage upon the faithful performance feature of the bond. Inasmuch as we have held that the surety is not released from liability upon the faithful per-

formance features of the bond, we need only inquire whether a money judgment in favor of the owner for damages would be more welcome or less onerous to appellant than a judgment in the like amount in favor of lien claimants. Appellant has suggested no reason and we can think of none indicating any difference between the two. On the contrary, the judgment as given is more in keeping with the spirit of the contract and bond. The contract expressly required the contractor to pay and discharge all liens and supply proof of that fact as a condition precedent for each progress payment and the final payment; the bond, of course, was by its terms and by the provisions of the Code of Civil Procedure, section 1183, expressly and directly answerable to the lien claimants.

What we have just said is applicable to a contention of appellant that the owner and not the contractor should have been charged with the interest allowed lien claimants upon their liens. It was the duty of the contractor to pay the liens as a part of the performance of his contract and as a condition precedent which he must perform before payment of the contract price became due to him. (*Holmes* v. *Richet,* 56 . Cal. 307.) If the contractor wished to avoid paying interest to lien claimants he should pay them as he had agreed to do in the contract. In this case, had the contractor paid lien claimants, he would have recovered a judgment against the owner for so much of the unpaid contract price as was by the court awarded to the lien claimants. Such judgment could have carried interest. It has been held that the owner is not obliged to pay liens out of the contract balance in order to save the contractor the expenses of a lien foreclosure suit. (*Covell* v. *Washburn,* 91 Cal. 560 [27 Pac. 859] ; *Clancy* v. *Plover,* 107 Cal. 272, 275 [40 Pac. 394].) The same rule applies to interest.

The $6,000 item of damage is objected to by appellant. This item represents the amount of damages allowed to the owner on account of the failure of the contractor to wire-brush the concrete surface on the front of the building as provided for by the specifications. This operation was intended to remove part of the cement from the surface and leave pebbles and stones protruding thus producing a special surface finish. This item is objected to upon the grounds: First, that the brushing out was rendered impos-

sible by the action of the building inspector in preventing the removal of the concrete forms before the expiration of five days; second, that the owner consented to a change of this part of the contract or at least waived performance of this provision; third, that the evidence is insufficient to support this amount of damages. All of the objections to this item go to the weight and sufficiency of the evidence. The record shows that there is substantial evidence to support this finding in face of each objection. The owner testified that the value of the building when completed without this work was $15,000 less than if it had been completed according to specifications. There was also evidence that the brushing of the surface to the effect desired could be accomplished even though the forms were not permitted to be removed by the building inspector until after five days. The contract was entered into with the city building ordinances in view. The contractor expressly agreed to observe them while prosecuting the work. While there was some evidence that the owner, upon first learning of the action of the building inspector, directed the contractor to experiment with other means of finishing the front of the building, he subsequently changed his attitude upon learning additional facts. The evidence on this point is also sufficient to support the court's finding or implied finding. After making this deduction the court, on the one hand, refused to allow the contractor an extra of some $1,200 for attempting to "bush hammer" the front of the building, an attempted substitute for brushing out; and, on the other hand, refused the owner a further deduction of some $1,100 for finish coating the concrete exterior surface, also a substitute for brushing out.

An item of $6,041.20 allowed by the court as one of the deductions from the contract price and forming a part of the total deductions of $15,285.40 is also objected to by appellant. This item differs from other items of deduction only in being larger in amount. The owner, as permitted by the provisions of the contract, directed the contractor to omit the performance of that part of the contract providing for glass and metal work on the front of the building. The owner thereupon let this part of the work to another contractor for the price of $5,900. The owner claims in his complaint that for the omission of this work

he was entitled to deduct $9,150, because that was the preliminary estimate of the cost of this work by the contractor. On the other hand, the contractor claimed that the owner was entitled to a deduction of only $5,900, because that was the amount the contractor paid a third party to do the work. The amount allowed by the court for this deduction was $6,041.20. The small difference between this sum and the $5,900 is not explained in the briefs, but the amount of the allowance is not attacked.

Appellant's briefs are vague in presenting its objections to this $6,041.20 deduction item. Appellant states that the owner was guilty of bad faith in claiming $9,150 for a deduction when he relet this work to another contractor for $5,900. The owner's testimony that his claim was the same in amount as the contractor's preliminary estimate of the cost of this work seems a sufficient answer to this charge, but it is by no means an uncommon thing for a litigant to claim too much. In this action both owner and contractor did so. A column of the deductions claimed and extras conceded by the owner, compared with a second column of the extras claimed and deductions conceded by the contractor, and the two columns compared with a third one of the extras and deductions allowed by the judgment show that the trial court was of the opinion that both parties had claimed too much and conceded too little, as its decision on nearly all items lay in the mean between the two extremes of the claims and concession of the two parties.

It is also stated that the deduction of this $6,041.20 from the contract price constituted such a change in the contract as to release the surety. The point is without merit in view of the express provisions of the contract permitting this very thing to be done. The appellant can hardly claim that this deduction is not a proper one in principle, because it was conceded at the trial and in the pleadings that $5,900 was a proper deduction to be made for this item.

Error is claimed in the court's refusal to allow the contractor an extra for certain labor and material for which recovery was permitted to certain lien claimants. This argument is based upon the assumption that if certain work and material made a valid lien it should for that reason alone form the basis for an extra for the contractor. Obviously this is not true. Whether or not the contractor is entitled

to an extra depends upon whether or not the work and material claimed as an extra is included in the contract price and specifications. For aught that is said in appellant's brief the liens referred to might very well be for labor and material which the contractor was obliged to supply under the general and special terms of his contract and for the contract price. Appellant does not discuss the subject matter of these liens in a way to compare it with the extras refused the contractor so as to indicate whether the subject matter of these liens was of the nature of extra work and material not provided for in the specifications and within the contract price.

Three other points raised by appellant deserve passing notice. The record shows no lack of evidence to support the court's finding that the owner and contractor had not entered into a partnership agreement supplanting the building contract.

The court allowed the appellant surety company $2,500 attorney's fees as against the contractor. The only point stated with respect to this item is that "there is no evidence to support the finding that the surety company is only entitled to $2,500 attorney's fees." It is well settled that the court may fix the amount of attorney's fees with or without expert testimony as to the value of such services. (*Freese* v. *Pennie*, 110 Cal. 467 [42 Pac. 978]; *Estate of Dorland*, 63 Cal. 281; *Spencer* v. *Collins*, 156 Cal. 298, 307 [20 Ann. Cas. 49, 104 Pac. 320].) The court was not bound to award all the attorney's fees asked for by the attorney merely because he was the only one who testified upon the subject.

The court allowed $4,000 damages for failure of the contractor to properly execute that portion of the contract which required tamping and settling of the earth of the ground floor before laying the cement floor thereon. This work admittedly was not done exactly as required by the specifications and there was testimony to the effect that the breaking of this cement floor was caused by the failure of the contractor to comply with the specifications in this regard.

Finally, the appellant claims the court erred in allowing damages for the contractor's delay in completing the building upon the basis of actual damages instead of

upon the basis of liquidated damages as provided for in the contract. Plaintiff's amended complaint pleaded that the contractor had agreed to pay $100 per day for delay in completing the building and in this connection set forth the part of the contract providing for liquidated damages and then added an additional allegation to the effect that plaintiff had been actually damaged equal to or in excess of the amount of the liquidated damages provided, "but that the extent of such damage is incapable of being approximated or estimated." The complaint also alleged that the building instead of being completed on the 31st of July, 1922, was not completed until the 4th of December, 1922, which was alleged to be a delay of 126 days. In the appellant's answer the contract provisions were admitted. The answer denied the amount of the delay and denied that the extent of damage was incapable of being approximated or estimated. The court found that the parties had agreed as set forth in the written contract. The court did not make an express finding upon the statement in the complaint, "but that the extent of said damage is incapable of being approximated or estimated." The evidence showed that the owner had entered into a lease in 1921 by which the tenant should take possession on the first of August, 1922, but owing to the delay in completing the building the tenant did not take possession until the 4th of October, 1922, with the exception of a small portion of the basement, for which a small amount of rent was paid. The actual amount of rent lost to the owner by the delay was the amount which the court allowed the owner as delay damage. The court also found that the building was not completed until January 15, 1923, notwithstanding the owner filed a notice of completion on December 4, and also in spite of the evidence that the tenant paid rent under his lease from the 4th of October, 1922. This finding is not attacked by appellant.

Plaintiff and respondent, who came into court upon a complaint apparently declaring for liquidated damages now defends the judgment for delay which is based upon actual damages. On the other hand the appellant which denied plaintiff's allegation that the damages were incapable of being approximated or estimated is now claiming that the court erred in applying the rule of actual damages instead of liquidated damages. Appellant claims that the finding

of the court, that an exhibit annexed to the findings is a true and correct copy of the contract between the parties, amounts to a finding that the agreement for liquidated damages therein is valid. The finding simply finds that the copy of the contract annexed was a true and correct copy and does not find to be true all the statements in the contract (including the statement therein "that the said damages of $100 per day are liquidated because it is impossible to approximate or estimate the damage . . . "). But even granting appellant's claim that the court did find the liquidated damage provision of the contract to be valid, the judgment for damage for delay would be thereby increased against appellant instead of diminished. If the court erred in assessing actual instead of liquidated damages the error was injurious to respondent and not to appellant. Considering the building as having been completed on December 4, 1922 (instead of later, on January 15, 1922, as found by the court), a delay of 126 days occurred. At $100 per day this amounts to $12,600. This amount is in excess of the amount of actual damage allowed for delay by the court ($12,041.25).

 It seems to be the position of appellant that the rule of liquidated damages should be applied up until the day, but not further than the day the tenant began to pay rent. This, of course, cannot be done. Whatever uncertainty there may be in this record on this point, one thing at least is certain and that is that either the one or the other rule must be applied to the exclusion of the other straight through to the completion of the building. Appellant, who insists upon the liquidated damage provision, must necessarily pay $100 per day until the day of completion of the building regardless of the fact that the tenant paid rent during a portion of that time. The fact that the tenant paid rent before the building was completed was a fortuitous occurrence. It must be regarded as a piece of good fortune for the owner, but it did not have the effect of suspending the liquidated damage clause of the contract. That clause was either entirely valid or void at the time the contract was made and remained either valid or void at all times thereafter. (*Hanlon Drydock etc. Co.* v. *McNear*, 70 Cal. App. 204 [232 Pac. 1002].)  Once granting a covenant for liquidated damages to be valid it is equally valid whether actual dam-

ages subsequently ascertained be either less or more than the amount agreed upon.

The amount of damage for delay allowed by the court being equal to the actual damage and less than the liquidated damages, appellant has no substantial grievance to urge in respect to this item of the judgment.

The judgment is affirmed.  -

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 19, 1928.

All the Justices present concurred.