[S. F. No. 2968.   Department Two.—January 3, 1905.]

## ABNER DOBLE COMPANY, Appellant, v. M. J. McDONALD, Respondent.

ACTION FOR MINING MACHINERY AND WORK—ISSUES—COUNTERCLAIM—CONFLICTING EVIDENCE—PROBABILITIES—SUPPORT OF FINDINGS.—In an action to recover a balance of account for mining machinery alleged to have been sold and delivered to the defendant, and for work in installing the same upon a mining claim owned by a corporation in which plaintiff was a stockholder, where issue was joined upon the complaint, and the defendant by answer and cross-complaint pleaded a counterclaim for money paid to plaintiff's use, and the evidence was squarely conflicting between the parties, without other witnesses, and the probabilities were in favor of the defendant, findings against the plaintiff, and in favor of the counter-claim of the defendant, were sufficiently supported and will not be disturbed upon appeal.

ID.—CROSS-COMPLAINT—FAILURE TO ALLEGE NON-PAYMENT OF COUNTER-CLAIM—CURE OF DEFECT.—The failure of the cross-complaint to
CXLV. Cal.—41

allege non-payment of the counterclaim pleaded therein was cured by answer thereto denying the original indebtedness, by failure to object to evidence thereof for such failure, and by findings in support of the counterclaim.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion.

Frohman & Jacobs, for Appellant.

Edward Lynch, for Respondent.

SMITH, C.—The plaintiff sues to recover the sum of $7,269.75, as balance due on an account for goods sold and delivered to the defendant, and for work and labor done for him at his request. The allegations of the complaint are denied; and a counterclaim is set up by the defendant, by answer and cross-complaint, for the sum of $383.60 paid by the defendant to the use of the plaintiff at its request. The goods in question consisted of mining machinery; and the work and labor counted on by the plaintiff was done in installing the same in the Gover Mine, the property of the Gover Mining Company. The money expended by the defendant was expended in the installment of the same machinery. The findings were for the defendant on all the issues, and judgment was entered in his favor for the sum demanded in the cross-complaint, with costs. The appeal is by the plaintiff from the judgment and from an order denying its motion for a new trial. The questions involved are as to the sufficiency of the evidence to justify the findings of the court.

At the time of the transactions in question the Gover Mining Company was heavily indebted, and without assets except the mine; and this had been attached, and was in imminent danger of being ruined for lack of funds to keep it free of water. The plaintiff was heavily interested in the company as a stockholder and creditor, and was also its surety for an indebtedness of fifteen thousand dollars (secured by mortgage on the mine), and for other indebtedness, to the Anglo-Californian Bank. It was represented in the management of the

mine by two of its own managers, Robert and William Doble, who were directors of the mining company, and with its president, Emery, appear to have had the management and control of it.

Under these circumstances, in the early part of September, 1894, the defendant, McDonald,—who prior to the transactions in question had no interest in the mine—was applied to by Emery and Robert Doble—as the former says—"to take hold of the mine" and to "keep [it] clear of water so that we could sell it"; for which purpose it was proposed to put the mine "in his hands to sell." Robert Doble's account of the matter is somewhat different. It is, in effect, that he proposed to McDonald to purchase the bank mortgage, and to acquire the mine by foreclosure; and he assured him that the plaintiff would not spend any more money on the mine. The implication seems to be that the plaintiff abandoned its interest in the mine to McDonald; but the evidence does not go to this extent. The last conversation between this witness and McDonald took place on September 7th or 8th, and on the 13th William Doble approached McDonald on the same subject, referring to the previous interview between Robert and McDonald; but the latter "had not arrived at a definite conclusion." But on the next day, the 14th, the witness says McDonald told him "that he had considered the matter favorably, and had decided to take up the Gover matter, and requested [the witness] to send a telegram to [his] brother Robert"; which was done accordingly—the telegram being written or dictated by McDonald. The witness adds: "Before I went, McDonald had stated that he had decided to take up the Gover proposition, and I completed my mission when I sent the telegram which he requested," etc. The telegram alluded to—which is of date September 14, 1894, and addressed to Robert Doble—and signed by William—is as follows: "McDonald has authorized Hale to keep water out of Gover under your directions." Hale was the superintendent of another mine for McDonald, and was instructed by telegram of same date: "Take charge under Robert Doble of Gover Mine. Keep water out at my expense. Will write." At the same time McDonald wrote him: "I have wired you this P. M. to take charge of Gover under Doble, to keep water out. Bank will not do it, and they will get into more trouble if the mine

fills with water, so I will do it for a while until something is agreed upon. I really don't know if the mine is worth anything or not. You don't want to promise to deliver wood to the Gover, unless you are sure what they will do for paying for it. . . . Yours truly. That Gover has broke everybody that has fooled with it yet, so I want to be careful.''

It was under these circumstances that McDonald took hold of the mine; and it is clear that up to and including this date all that he had undertaken had been to keep the water out of the mine, and that there was no obligation on his part to do this any longer than he should choose. But according to the testimony of William Doble, there was another interview between him and McDonald on the 17th of September, on which occasion Doble says he was instructed by McDonald to purchase the machinery in question and have the same put up at the mine for and on account of the latter; and this, the witness says, was done accordingly. But it is denied by McDonald that he gave such an order, or that it was understood or agreed that the machinery was to be purchased or put up on his account, or that he was in any way interested in the purchase; and there were no witnesses as to what passed between the parties other than themselves.

Under the circumstances of the case, the plaintiff's account of the matter presents some points of difficulty that require explanation. McDonald, according to his own account, was willing, for reasons stated, to go to some expense to assist Emery and the plaintiff, and it is not improbable that he anticipated making some profit in the future from his expenditures. But he did not have, nor did he acquire, any interest in the mine. Nor did he seek to acquire any, unless his attempt to purchase the mortgage to the bank can be so regarded; and had the proposed purchase entered seriously into his calcula-. tions, it would seem that before investing so largely, as it is claimed he did, he would at least have taken an option on the mortgage, or otherwise secured himself. This could easily have been effected; and without this, and in the absence of any contract with the mining company or the plaintiff securing him an interest, there is an intrinsic improbability in the theory that he would have been willing to make so heavy a purchase on the mere chance of purchasing the claim against the mine. This it was equally open to any one to purchase; and the plaintiff

itself, as the surety of the mining company, had the option to acquire it by mere payment. Whatever advantage, therefore, there was in the privilege of acquiring the claim was peculiarly the plaintiff's; and without an option from it, or from the bank, the defendant's chance of acquiring it was dependent entirely upon the plaintiff's future consent. On the other hand, there is no improbability in the supposition that the plaintiff should be willing to go to the expense of the machinery in order to save its large investment; and it is to be noted in this connection that it retained all its rights in the mine intact. The transaction, as detailed by William Doble, was therefore simply that McDonald consented to expend upon the property of the mining company—in addition to about four thousand dollars, expended under the original understanding—the further sum of over seven thousand five hundred dollars, without acquiring any interest in or security upon the property, and without any motive that could be reasonably ascribed to a man of average intelligence.

The court below was therefore justified in finding for the defendant on the main issues, and also on the cross-complaint; and indeed it would have been justified in doing so, even if the probabilities of the case had been more equally balanced. Other points made by appellant relate to matters not affecting the result. The failure of the defendant to allege in his cross-complaint that the amount demanded had not been paid, was cured by the plaintiff's answer, which denies the original indebtedness; and also by the failure to object to the evidence on this ground at the trial and by the findings. We see no material error in the record.

We advise that the judgment and order appealed from be affirmed.

Chipman, C., and Harrison, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.

Hearing in Bank denied.