[Civ. No. 2540.  Second Appellate District, Division Two.—April 13, 1920.]

## JAMES B. BLEDSOE, Appellant, v. L. C. STUCKEY, Respondent.

[1] PROMISSORY NOTE—EVIDENCE OF INDEBTEDNESS—VARYING TERMS BY PAROL.—In an action to collect an alleged balance due on a promissory note, in the absence of any allegation or showing of fraud or mistake, it is error to permit the defendant to show by parol evidence that at the time he executed the note in question he did not owe the plaintiff the amount for which the note was given, but that he was entitled to credit on the note for the amount of certain payments made prior to that time.

[2] ID.—RECEIPT OF CHECK — PAYMENT — PRESUMPTION.—While the mere receipt of a check by the creditor does not operate as payment, where the creditor acknowledges receipt of the check, does not deny that he cashed it, fails to return it or. make any protest of nonpayment to the debtor, and in no way questions the transaction, he will be presumed to have collected the money.

[3] ID.—ACTION TO COLLECT ALLEGED BALANCE—CROSS-COMPLAINT FOR OVERPAYMENTS.—In an action to collect an alleged balance due on a promissory note given in payment of certain cattle, the defendant may, by cross-complaint, recover from the plaintiff any sum paid by him to the plaintiff in excess of his indebtedness on the transaction.

[4] ID.—DEMAND FOR OVERPAYMENTS — PLEADING — ERROR WITHOUT PREJUDICE.—In an action to collect an alleged balance due on a promissory note given in payment of certain cattle, a cross-

---

1. Fraud as exception to rule excluding parol evidence to vary written contract, generally, notes, 6 L. R. A. 45, 46, 838; 17 L. R. A. 272.

2. Payment by commercial paper, notes, 69 Am. St. Rep. 346; 35 L. R. A. (N. S.) 1.

4. Recovery of money paid by mistake, notes, 50 Am. Rep. 139; 94 Am. St. Rep. 408.

complaint to recover overpayments on account of such indebtedness made through mutual mistake of the parties fails to state a cause of action where there is no averment of either demand for or nonpayment of the overpayments claimed by the defendant; but, under section 4½ of article VI of the constitution, error in overruling a general demurrer to such cross-complaint must be disregarded where it is apparent that such error was without prejudice.

[5] ID.—FAILURE TO DEMAND OVERPAYMENTS—INTEREST RECOVERABLE. In the absence of a showing that the plaintiff willfully or wrongfully received the overpayments, the subject matter of the defendant's cross-complaint, and no demand having been made prior· to filing the cross-complaint, defendant was not entitled to interest on the amount of his recovery under the cross-action prior to the date of filing his cross-complaint.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Reversed.

The facts are stated in the opinion of the court.

Bledsoe & Phipps and Leonard, Surr & Hellyer for Appellant.

A. C. Galloway for Respondent.

SLOANE, J.—This action was brought to recover an alleged balance of $313.30 on a promissory note for $2,675, and to foreclose a chattel mortgage securing the same. Defendant by his answer pleaded payment of the note in full, and by cross-complaint seeks to recover from plaintiff·the sum of $546, which defendant claims to have paid by mistake, in excess.of his indebtedness on the transaction. The judgment was that plaintiff take nothing by his action, and that the defendant recover the amount of overpayment alleged in his cross-complaint.

The main contention on the appeal is as to the application of two payments, aggregating $700, made by defendant to the plaintiff prior to the execution of the note sued on.

The transaction out of which the entire controversy grows was substantially as follows: In May, 1911, an agreement was entered into between the parties whereby the plaintiff sold to the defendant a lot of cattle and all of plaintiff's interest under a certificate of purchase from the state of

California in 280 acres of land in Kern County. The price to be paid for the land was $400, as a fixed sum, with a further payment of $600 if plaintiff's interest in a portion of the tract should be confirmed by the courts in pending litigation with certain adverse claimants. The number of head of livestock purchased was not specified in the original agreement, further than that defendant was to take all of plaintiff's cattle at $22.50 per head, excepting some fifteen or twenty head, which plaintiff reserved. There is conflict in the evidence as to how many head of cattle were actually sold and delivered to defendant.

The evidence taken on the trial shows that at the date of the original agreement defendant paid to appellant on account of the transaction $200, and in December of the same year the further sum of $500. Subsequently, on January 15, 1912, by way of an adjustment of his indebtedness, defendant executed the promissory note sued on, for the principal sum of $2,675, and a chattel mortgage securing the same on 120 head of the cattle purchased from plaintiff and 100 additional cattle of his own. The defendant testified that he only received 120 head of cattle from the plaintiff, and that this note and mortgage for $2,675 covered the price he was to pay for them. It is conceded that the land litigation was determined later in plaintiff's favor, and that defendant, subsequent to the execution of the note, became liable for the additional $600 agreed to be paid for the land, making a total liability on the entire transaction, according to defendant's contention, and as the court found, of $3,675. Defendant claims credit on this amount for the two payments aggregating $700 made prior to the note and mortgage, which, if allowed, with the subsequent payments shown in evidence, would leave the balance in defendant's favor as claimed under his cross-complaint. Plaintiff's testimony is to the effect that there were at least 140 head of cattle sold to defendant, besides one or two horses; that the entire indebtedness was several hundred dollars in excess of $3,675; and that the $700 paid prior to the execution of the note and mortgage left a balance of $2,675 for which the note was given, besides the contingent balance of $600 on the land.

If the only question involved was the sufficiency of the evidence to sustain the findings of the court, we would be

47 Cal. App.—7

compelled under this conflict in the testimony to uphold the findings under the contention of defendant that his total indebtedness amounted to only $3,675, and that he was entitled to credit thereon for the $200 and $500 payments made prior to the execution of the note. [1] But it is contended on behalf of appellant that the admission of evidence of these prior payments as applying toward the satisfaction of the note was error. This testimony was objected to by appellant on the ground that it was an attempt to dispute the terms of a written contract; that by the terms of the note, executed long after these payments were made, it was stipulated and agreed that at the date of the execution of the note defendant was indebted to plaintiff in the sum of $2,675; and that an attempt to reduce the amount by credits arising from previous transactions between the parties was varying the terms of a written instrument by parol evidence. We do not see how this conclusion is to be avoided. The execution of this note was the written declaration, in the most decisive manner, of a present indebtedness of $2,675. It was, moreover, a stating of account between the parties. (*Kinley* v. *Thelen,* 158 Cal. 175, 183, [110 Pac. 513].) There is no attempt to avoid it by any allegation or showing of fraud or mistake; and we do not see on what theory defendant could be permitted to say that the amount of his liability was not what the note called for, but $700 less than that sum. It cannot be shown by parol that the sum to become payable under the terms of the note is different from that specified, nor that a certain prior account was to be deducted from the note. (Daniel on Negotiable Instruments, sec. 81.) Parol evidence cannot prove a contemporaneous condition which might reduce a specified sum payable on the note. (2 Parson on Bills and Notes, p. 506.) In *Eaves* v. *Henderson,* reported in 17 Wend. (N. Y.), 190, the defendant sought to set off on a suit upon his promissory note certain amounts due him on account with the plaintiff prior to the execution of the note. The court held this to be an attempt to contradict the amount expressed in the note, and that the evidence was inadmissible—even though in that case it was claimed that at the time the note was executed it was agreed by the payee that the items of the account should apply on the note.

If it be argued that if these disputed payments of $200 and $500 should be held to be not applicable in reducing the amount due under the note sued on they at least represent a liability for money had and received by the plaintiff without consideration, and hence recoverable by cross-complaint in this action, the answer to this is the plea of the statute of limitations set out in plaintiff's answer to the cross-complaint these payments having been made upward of four years prior to the filing of the cross-complaint. Of course, the payments made after the execution of the note, and properly applicable as payments thereon, to which plaintiff also pleads the statute of limitations, are not subject to the bar of the statute, for the reason that they applied as payments as of the date of their receipt by plaintiff. We think, too, in further bar of the claim that these two payments are applicable in reduction of the amount of the note and mortgage, that paragraph 2 of defendant's cross-complaint is in effect an admission of a balance of indebtedness owing to plaintiff at the time of the execution of the note and mortgage of $2,675. This indebtedness being evidenced at a date long after the payments were made, they clearly cannot be allowed in reduction of the amount so admitted to be owing by the cross-complainant and by the note itself.

Our conclusion on this point is, therefore, that on January 15, 1912, defendant's indebtedness to plaintiff was fixed, beyond evasion by parol evidence, at the sum of $2,675, as shown by the note of that date.

It also appears by undisputed evidence that subsequently, by a favorable termination of the litigation on the land, the further contingent sum of $600 became due from defendant to plaintiff. This last amount, as the admitted facts show, was increased by certain accruals of interest and installments on the land to the sum of $692. This sum was paid on April 19, 1915, however, thus disposing of that item. It only remains to be seen what payments are properly to be credited on the promissory note, and to any overpayment which defendant may be entitled to recover.

From June 12, 1911, to October 27, 1914, payments were made in an aggregate amount of $3,000, which, it clearly appears, are rightly credited to defendant. [2] In addition to proof of these payments, defendant introduced a letter from plaintiff of date August 24, 1914, in which the latter

acknowledges the receipt, on or about that date, of another check from defendant for $300. None of the witnesses seemed to have a very distinct knowledge as to this check, and the check itself, canceled or otherwise, was not produced. Defendant had no definite recollection regarding it, and stated that he did not know whether it was his own check or one drawn in his favor by someone else and indorsed over to plaintiff. Plaintiff does not deny having received it, or that he collected on it. Appellant is supported by the authorities cited in the contention that the mere receipt of a check by the creditor does not operate as payment. But in a case where, as here, the creditor acknowledges the receipt of the check, does not deny that he cashed it, fails to return it or make any protest of nonpayment to the debtor, and in no way questions the transaction, he will be presumed to have collected the money. The court was justified in crediting the defendant with the amount.

These payments applicable on the defendant's account aggregate a total amount of $3,300. The total sum due under the terms of the note, including interest calculated on the basis of the various partial payments, is $3,104.49. This leaves an overpayment of $195.51 subject to recovery under defendant's cross-complaint, if properly pleaded, instead of $546, as allowed by the judgment.

Appellant, however, contends that his demurrer to the cross-complaint should have been sustained, both on the ground that the facts pleaded were not proper matter of cross-complaint, and on the ground that the facts alleged were not sufficient to constitute a cause of action. [3] We think the facts alleged constitute a proper cross-complaint. They all grew out of a transaction of which the note sued on in the main action was a part. This is at least true as to all moneys paid by defendant to plaintiff on which credits are herein allowed to respondent. Treating the land purchase as entirely a separate transaction from the liability arising on the note, as contended for by appellant, it appears to have been adjusted separately between the parties. The $692 payment made April 19, 1915, is conceded to have been in settlement of the balance due on the land trade. All the other payments made subsequent to the execution of the note were properly credited thereon, and any overpayment made by respondent is included in the $1,000 pay-

ment of October 27, 1914, which was admittedly made on the note; and the claim to recover the amount of overpayment arises on an overpayment on the note—the contract sued on in plaintiff's action. In any event, defendant's action upon his affirmative pleading is in effect for money had and received by plaintiff, and arises on an implied contract to repay. The facts alleged constituted proper matter of counterclaim under subdivision 2 of section 438 of the Code of Civil Procedure, if not of cross-complaint. We see no reason, nor any prejudice resulting to appellant, to prevent treating it as a counterclaim. "It is not what a pleading is called, but the facts which it sets up that determines its character. Its character and sufficiency will be determined by the court from the facts alleged in it." (*McDougald* v. *Hulet,* 132 Cal. 155, 160, [64 Pac. 278, 280]; *Holmes* v. *Richet,* 56 Cal. 307, [38 Am. Rep. 54]; *Gregory* v. *Bovier,* 77 Cal. 121, [19 Pac. 232]; *Meeker* v. *Dalton,* 75 Cal. 154, [16 Pac. 764].)

[4] The demurrer, for want of facts in the cross-complaint, however, we think should have been sustained. There is no averment of either demand for or nonpayment of the overpayments claimed by the defendant. There is nothing in the cross-complaint to indicate that the excess payments on the plaintiff's demand were made or received other than through mutual mistake of the parties. As is said under a similar state of facts in *Dunham* v. *McDonald,* 34 Cal. App. 744, [168 Pac. 1063]: "He does not allege that the cross-defendant had any better knowledge of the circumstances and facts than he had. Under such circumstances we think that a demand for payment was a prerequisite to the filing of the cross-complaint. . . . It seems too clear for argument that it was necessary also to show by appropriate allegation in the cross-complaint that the money claimed by the defendant of the plaintiff had not been paid." While, however, the overruling of plaintiff's demurrer was error, we think it was error without prejudice, and may be disregarded under the provisions of section 4½ of article VI of the constitution.

In the first place, the failure to allege nonpayment, and perhaps, also, the failure to allege demand before bringing suit, was cured by defendant's denial, in answer to the cross-complaint, that there had been any amount paid in

excess of the balance due on the note and mortgage, or that there was any amount whatever due or owing the defendant. While the more common application of the rule of curing defects in a complaint by averments in the answer contemplates an affirmative allegation in the answer of the precise fact omitted from the complaint (Pomeroy on Remedies, sec. 579), it seems to have been the practice in this state to treat an express denial by answer of the omitted matter as curing the omission. (*Vance* v. *Anderson,* 113 Cal. 537, [45 Pac. 816]; *Abner Doble Co.* v. *McDonald,* 145 Cal. 641, [79 Pac. 369]; *Flinn* v. *Ferry,* 127 Cal. 648, [60 Pac. 434].) This rule that omitted allegations of a complaint may be aided by averments in the answer applies even though a demurrer to the sufficiency of the complaint has been erroneously overruled. (*Daggett* v. *Gray,* 110 Cal. 169, [42 Pac. 568]; *Savings Bank* v. *Barrett,* 126 Cal. 413, [58 Pac. 914]; *Kreling* v. *Kreling,* 118 Cal. 413, [50 Pac. 546]; *Cohen* v. *Knox,* 90 Cal. 266, [13 L. R. A. 711, 27 Pac. 215]; *Donegan* v. *Houston,* 5 Cal. App. 632, [90 Pac. 1073].) Moreover, the cross-defendant was clearly not taken at a disadvantage or in any way prejudiced by failure to allege nonpayment of money he denies ever having received or owed; and it is a fair presumption that it would have been a futile act on the part of defendant to have demanded payment of this claim before filing his cross-complaint. This is not a case where a demand was a necessary prerequisite to the accrual of the cross-defendant's liability. The only object of the demand in such a case as this is to give the adverse party an opportunity to make settlement, if he desires, without being subjected to a suit; and where, as here, the action between the parties is already pending, and the cross-demand arises from the same transaction, it is questionable if a demand is necessary (*Sharkey* v. *Mansfield,* 90 N. Y. 227, [43 Am. Rep. 161]); and, in any event, the failure to plead it is of trifling consequence.

[5]  We are of the opinion, however, that in the absence of a showing that the plaintiff willfully or wrongfully received these overpayments from defendant, and no demand having been made prior to filing the cross-complaint, defendant was not entitled to interest on any amount of his recovery under the cross-action prior to the date of filing his

cross-complaint, and, as already indicated, there was error in crediting certain payments on the note.

The judgment is reversed, with directions to the trial court to retry the issues as to amount of recovery on the cross-complaint.

Finlayson, P. J., and Thomas, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 12, 1920.