[Civ. No. 3315. Second Appellate District, Division Two.—May 5, 1921.]

## ELIZABETH J. STEPHAN, Appellant, v. P. LAGER-QVEST et al., Respondents.

[1] CONTRACT—COMPLETENESS—QUESTION OF LAW—PAROL EVIDENCE.—Whether writings which pass between parties contain the complete contract they have made is a question of law and is to be determined from the face of the instruments, and when an inspection of them shows that they are incomplete, other evidence may be received for the purpose of supplying the missing matter.

[2] ID.—SALE OF RESTAURANT—DELIVERY OF WAR SAVINGS CERTIFICATES—TERMS—INCOMPLETENESS OF RECEIPT—PAROL EVIDENCE.—Where the sale of a restaurant through an agent was evidenced by writings, one of which was in the form of a letter addressed to the agent and signed by both parties to the sale providing for an immediate payment on account of the price and for a further payment within ten days, and another was in the form of a receipt signed by the agent acknowledging delivery by the buyer of war savings certificates to be held by the agent in escrow for the buyer for ten days, the receipt was peculiarly open to explanation by extrinsic evidence for the purpose of showing the terms under which the certificates were to be held, since writings of that type are not conclusive and may be explained, or even varied, by other proof.

[3] ID.—CONTRACT FOR SALE OF RESTAURANT—DELIVERY OF WAR SAVINGS CERTIFICATES AS SECURITY—PLEDGE.—Where a contract for the sale of a restaurant provided for an immediate payment on account of the purchase price and for a further payment within ten

days, the delivery of war savings certificates by the buyer as security for the making of the first deferred payment amounted to a pledge and not to a delivery in escrow, notwithstanding the receipt for the certificates denominated the delivery as one in escrow, since the character of a document or of a transaction cannot be made to depend upon misnomer, but it must be determined from facts.

[4] ID. — VIOLATION OF DUTY BY AGENT — DEPOSIT OF CERTIFICATES WITH BANK—RIGHT OF RECOVERY.—Where a buyer under a contract for the purchase of a restaurant delivered war savings certificates to the seller's agent to secure his obligation in making the first deferred payment, and the agent, in order to avoid liability in a suit by the buyer for rescission, deposited the certificates with a bank, and the bank merely held them as did the agent without making any superior claim, the right of the seller to recover such certificates was not affected by the wrongful act of the agent.

[5] PLEDGE — PLEDGE-HOLDER — AGENT OF PLEDGEE. — An agent of the pledgee may be made the holder of the pledge.

[6] ID. — DEFAULT OF PLEDGOR — RIGHT OF POSSESSION BY PLEDGE-HOLDER.—The rights of a pledgee on the default of the pledgor upon the obligation secured by the pledge are defined by sections 2986–3011 of the Civil Code, and there is nothing in the sections covering the subject which confers upon the pledgee the right to insist, as against the pledge-holder, upon the possession of the property pledged, and in truth the statute seems to contemplate that the possession shall remain in the pledge-holder pending the exercise by the pledgee of the right to subject the pledge to 'the liquidation or discharge of the main obligation.

[7] ID.—RECOVERY OF PLEDGED PROPERTY — DEMAND. —Where pledged securities were delivered to pledgee's agent as pledge-holder, and there had been no demand made upon the agent to enforce the pledgee's rights, the pledgee was not entitled to recover the securities from a bank with which the pledge-holder had deposited them.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hocker & Austin for Appellant.

Albert G. Payne for Respondents.

WORKS, J.—This is an action for the recovery of the possession of certain war savings certificates issued by the

United States government. The defendants had judgment and the plaintiff appeals.

The facts of the case are of a complex character. Appellant was the owner of a restaurant and, acting through one E. W. Elder, her agent, sold the place to respondent Lagerqvest. Elder conducted his negotiations in the name of Business Investment Company. The sale was evidenced by three certain writings. One of these, in the form of a letter addressed to Business Investment Company and signed by both parties to the sale, was, in part, as follows: "I hand you herewith check for $250 as part payment on purchase price of restaurant. . . . Full purchase price to be $3,000, balance as follows: $500 on or before ten days from date, and balance of $2,250 to be paid in monthly installments of $200, and interest, purchase lease or chattel mortgage back on restaurant. . . . Possession to be given upon payment of the $500 above mentioned, to be paid on or before ten days." Another of the instruments was in the form of a receipt, signed by Business Investment Company and Elder, and was in these words: "Received of P. Lagerqvest $250 as part payment on purchase price of restaurant, . . . full purchase price to be $3,000, balance as follows: $500 on or before ten days from date, and balance of $2,250 to be paid in installments of $200 per mo., and interest. Secured by chattel mortgage or purchase lease back on restaurant and equipment." This was the form of the third paper, signed by Business Investment Company, per Elder: "Received of P. Lagerqvest six war saving certificates to be held by us in escrow for Mr. Lagerqvest for ten days." It is upon a determination of the meaning and effect of this writing that the outcome of the appeal principally depends.

Some time after the passing of these three writings, respondent Lagerqvest wrote a letter to Elder and to one Vandewater, whose interest in the transaction does not clearly appear, a fact, however, which is not material. The letter follows, in part: "I agree not to sue you or make you a party to any action, in connection with, or growing out of the sale of the Lafayette Cafe, . . . if you will deposit the One Hundred and Twenty (120) war Saving stamps delivered you by [me (?)] as collateral security, in said transaction and which is now held by you as such

collateral security, in the Hellman Commercial Trust & Savings Bank. . . . That said deposit shall state and be accepted by said Bank to be held,in trust as such Collateral security, until the said dispute between the said P. Lagerqvest and Elizabeth J. Stephan is arrived at by written agreement, or determined by a judicial decision of the Courts, and not otherwise. . . . That nothing in this agreement shall be taken to affect the rights of the said P. Lagerqvest, as to the ownership of said stamps or their rights of possession thereof." Thereafter, a letter was written to the bank, over the signature of Business Investment Company and Elder, containing the following: "We hand you herewith one hundred twenty United States War Savings Certificates, of $5.00 denomination, . . . which you are instructed to hold subject to our order, and pending the outcome of that certain action . . . entitled P. Lagerqvest vs. Elizabeth J. Stevens, No. B 67504, at which time you will receive further orders from us."

. In the meanwhile respondent Lagerqvest had served upon appellant a notice of rescission of the contract for the sale of the restaurant. The notice stated certain alleged misrepresentations as a basis for rescission, and contained the following: "I . . . demand that you pay me back the said $250.00 I paid you . . . and also demand that you deliver to me the Six War Savings Certificates, face value of $500.00 . . . Said above named certificates are known as United States Of America War Savings Certificates." Thereafter respondent commenced his action for a rescission, it being numbered B 67504, as stated in a letter above set forth. The complaint contained a copy of the notice of rescission and alleged, after setting up the terms of the contract for the sale of the restaurant: "That in order to secure the fulfillment of the first payment to be made, to wit: $500.00 the plaintiff herein deposited with defendants 120 United States of America War Savings Certificates, . . . and the same is now being holden by said defendants." The pleading also contained an allegation that defendants had failed, neglected, and refused to return the $250 and "to deliver to the said plaintiff the said 120 United States of America war savings certificates." The prayer demanded, in part, that the defendants be "directed and commanded to deliver to the said plaintiff the aforesaid 120 United States of

America war savings certificates now held by them by reason of said contract.'' The answer, in effect, admitted the allegations of the complaint which we have quoted.

In due time the action for rescission came on for trial and the plaintiff there, respondent Lagerqvest here, was nonsuited. Appellant thereafter commenced the present action, and at the trial which resulted in the judgment from which this appeal is prosecuted there were introduced in evidence all the writings from which quotation is above made, including the complaint in the rescission action. At the trial, also, Elder testified that he was *to hold* the war savings stamps for respondent Lagerqvest "pending the ten days necessary *to send* them to Washington and get the money out of them,'' however impossible the testimony may appear to be.

It is at once obvious that the three writings evidencing the sale of the restaurant do not show the complete agreement between the parties. The paper given in the form of a receipt, to the effect that the war savings certificates were delivered by respondent Lagerqvest to the agent to be held "in escrow'' for Lagerqvest, is manifestly incomplete. It fails to show the terms under which the certificates were to be held. What were the instructions under which the agent for appellant took the certificates from the opposite party to the sale? This question must be answered from evidence *dehors* the three writings, and that such evidence may be looked to is certain. **[1]** Whether writings which pass between parties contain the complete contract they have made is a question of law and is to be determined from the face of the instruments (*Gardiner* v. *McDonogh,* 147 Cal. 314 [81 Pac. 964]); and when an inspection of them shows that they are incomplete, other evidence may be received for the purpose of supplying the missing matter (*Sivers* v. *Sivers,* 97 Cal. 518 [32 Pac. 571]; *Daly* v. *Ruddell,* 137 Cal. 671 [70 Pac. 784]; *Blahnik* v. *Small Farms Imp. Co.,* 181 Cal. 379 [184 Pac. 661]). **[2]** Also, the paper concerning the savings certificates, being in the form of a receipt, was peculiarly open to explanation by extrinsic evidence, for writings of that type are not conclusive and may be explained, or even varied, by other proof (*Snodgrass* v. *Parks,* 79 Cal. 55 [21 Pac. 429]; *San Pedro Lumber Co.* v. *Schroeder,* 156 Cal. 158

[103 Pac. 888]; *Channel Commercial Co.* v. *Hourihan,* al. App. 647 [129 Pac. 947]). **[3]** Applying these rules, and taking into account all the evidence in the record on the subject without again reciting it, it appears to have been established without contradiction or dispute that the savings certificates were taken by Elder as security for the payment of the $500, the first deferred payment mentioned in the writings. The delivery of the obligations to him clearly amounted to a pledge (Civ. Code, secs. 2924, 2986, ·2987), and the fact that the receipt termed the delivery a delivery in escrow did not make the certificates an escrow, for the character of a document or of a transaction cannot be made to depend upon misnomer, but it must be determined from facts (*McDougald* v. *Hulet,* 132 Cal. 154 [64 Pac. 278]; *Bledsoe* v. *Stuckey,* 47 Cal. App. 95 [190 Pac. 217]).

**[4]** The true nature of the transaction concerning the savings certificates thus being made manifest, the only remaining question is whether appellant was entitled to judgment for their possession. The fact that Elder, in order to avoid liability in the suit for rescission, shamefully violated his duty as the agent of appellant, or as a pledgeholder owing an equal fidelity to appellant and to respondent Lagerqvest, does not affect the question. Respondent bank urges no superior claim to the certificates and, making no such contention, it holds the obligations as Elder held them. Indeed, the letter from respondent Lagerqvest to Elder, by which the delivery of the certificates to the bank was requested, seems to have contemplated that the status of the certificates should not be changed by the delivery. The sole remaining question is, then, did Elder, holding the certificates as security, so hold them as the agent of appellant, to whose call he must have responded, or did he retain them as a pledge-holder, subject to the rights which appellant might enforce against him in that capacity under the law of pledge?

**[5]** ''A pledgor and pledgee may agree upon a third person with whom to deposit the property pledged, who, if he accepts the deposit, is called a pledge-holder'' (Civ. Code, sec. 2993); and there is no reason why Elder, agent of appellant though he was in the sale of the restaurant, may not have been made a pledge-holder for the taking

and retention of the war savings certificates. In fact, the authorities are unanimous to the effect that even an agent or servant of the pledgor may, by agreement between the parties, be made a pledge-holder (21 R. C. L., p. 648, par. 13; note to *Re Succession of Lanaux,* 25 L. R. A. 577; note to *First Nat. Bank* v. *Bradshaw,* 39 L. R. A. (N. S.) 892); and, under special circumstances, the pledgor himself may be allowed to retain possession of the pledged property without affecting the validity of the pledge (21 R. C. L., p. 648, par. 13; note to *First Nat. Bank* v. *Bradshaw,* 39 L. R. A. (N. S.) 892). The very essence of the principle of pledge, without the citation of authority upon the subject—and upon a somewhat cursory examination there seems to be none—lends itself to the idea that the agent of the pledgee may be the holder of the pledge.

[6] The rights of a pledgee, on the default of the pledgor upon the obligation secured by the pledge, are defined by the Civil Code (secs. 2986–3011), and there is nothing in the sections covering the subject which confers upon the pledgee the right to insist, as against the pledge-holder, upon the possession of the property pledged. In truth, the statute seems to contemplate that the possession shall remain in the pledge-holder pending the exercise by the pledgee of the right to subject the pledge to the liquidation or discharge of the main obligation, for "a pledge-holder must enforce all the rights of the pledgee, unless authorized by him to waive them" (sec. 2996); " . . . a pledge-holder for reward, assumes the duties and liabilities of a depositary for reward" (sec. 2997); and "a gratuitous pledge-holder assumes the duties and liabilities of a gratuitous depositary" (sec. 2998). Whether the rights of appellant might be different if it were shown that demand had been made upon Elder, or upon respondent bank, to enforce the rights of appellant (sec. 2996), and the demand had been refused, we, of course, need not consider. [7] It is apparent that appellant has mistaken her remedy and that she was not entitled to judgment for the possession of the pledged property. Because of the conclusion we have reached on that question it is not necessary to consider other points made by the appellant.

The judgment is affirmed.

Finlayson, P. J., and Craig, J., concurred.